A & C ADJUSTERS, INC., a corporation, Appellant,

v.

EASTERN AQUATICS, INC., a corporation, Appellee.

No. 4083.

District of Columbia Court of Appeals.

Argued Oct. 23, 1967.

Decided Dec. 27, 1967.

Bernard T. Levin, Washington, D. C., for appellant.

Mark P. Friedlander, Jr., Washington, D. C., with whom Mark P. Friedlander, Blaine P. Friedlander, Washington, D. C., and Harry P. Friedlander, Arlington, Va., were on the brief for appellee.

Before HOOD, Chief Judge, MYERS, Associate Judge, and CAYTON (Chief Judge, Retired).

CAYTON, Judge.

This is an appeal from a judgment on a verdict for compensatory and punitive damages in an action for wrongful seizure of personal property.

Appellee Eastern Aquatics, Inc. entered into a franchise agreement with Chillette, Inc., which was in the "refrigerated mer-

chandising" business. Under the agreement Eastern was given a certain geographic territory within which it had the exclusive right to service machines sold by Chillette. It also provided that Chillette would furnish Eastern with certain equipment, uniforms, etc., and a service truck, "the title to said truck being retained by 'CHILLETTE.'" Eastern was required to place with Chillette a "fully returnable" deposit of some $4,250.-00 for the duration of the agreement.

A truck was secured for Eastern from Willard Leasing, Inc. Willard gave to one Park, president and sole owner of Eastern, power of attorney to "sign in the name, place and stead of * * * 'Willard' * * * any Certificate of Ownership issued by the Division of Motor Vehicles in the state of Maryland." Park obtained temporary license plates, but never secured permanent plates because of contractual difficulties arising with Chillette. He parked the truck by the side of his house, and used it to store certain equipment belonging to Eastern.

A few months later, Eastern learned that Chillette had become bankrupt. Soon after that, a representative of the appellant, A & C Adjusters, came to Park's home and told Park that he had come to pick up the truck. At trial it was testified that A & C was relying on a written assignment of a right to repossess from a Pittsburgh "adjuster." This stated that the "client" was Willard Leasing, Inc., and that the reason for repossession was "Lease Cancelled." Park refused to turn over the truck to A & C's representative and also told Tibbs, treasurer of A & C, not to send anyone else to his house, and that he would return the truck when the deposit money he had given Chillette was returned to him.

A couple of months after that, Park noticed that the truck with the equipment stored inside was missing from the side of the house. Tibbs later told Park that the truck was in a certain storage lot in the District of Columbia. Tibbs testified that they had seized the truck by authority of Chillette's trustee in bankruptcy. A letter from the trustee stated that he had sold to Willard Leasing "the assets of Chillette, Inc. * * * including all Installment Sales Agreements," and all physical assets of Chillette.

Going to the storage lot where he had been told the truck was, Park learned that it had in fact been removed to Pittsburgh. This suit followed, Eastern demanding damages from A & C.

At the close of the case defendant moved for a directed verdict, which was denied. The trial court instructed the jury that they were to decide which of the parties had the right to possession of the truck at the time it was repossessed; that if plaintiff had the right of possession, then there was a trespass; that if defendant had a right to possession it had the right to repossess the truck and the jury should then find for the defendant.

We agree with appellant that this was error. We hold that this was a legal question, which was not a proper subject for jury consideration. We are also of the opinion that the right to possession of the truck would not necessarily be determinative of plaintiff's claim for wrongful seizure of the articles of equipment stored in the truck.

We think the case should be remanded for a new trial, at which there should be explored some gaps appearing in the present transcript which prevent us from saying with any assurance that there should have been a directed verdict. Among these are a fuller exposition of the Chillette bankruptcy proceedings, including an inventory of Chillette assets, as bearing on the question whether the truck was an asset of Chillette; and inquiry as to whether the franchise agreement between Chillette and the appellee ever ended; and whether when Willard bought the assets of Chillette, it actually dissolved the franchise agreements.

Reversed, with instructions to award a new trial.