Commonwealth *v.* Devine, Appellant.
Commonwealth *v.* Giglio, Appellant.

Argued November 15, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

100

*Anthony V. DeCello*, with him *DeCello, Bua & Manifesto*, for appellant, at No. 88.

*Herman M. Rodgers*, with him *Rodgers, Marks & Perfilio*, for appellant, at No. 103.

*Robert F. Banks*, First Assistant District Attorney, with him *Joseph J. Nelson*, District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., March 31, 1975:

Appellants, convicted of unlawful possession of marijuana and related charges, contend that the warrant authorizing the search of appellants' home lacked probable cause.

In September, 1972, appellants, formerly high school classmates, began sharing a house on South Darby Road in Hickory Township, Mercer County. Some time before the beginning of 1973, appellant Giglio left the Shenango Valley area and traveled to Texas. There he met Samuel Perfilio, also from Mercer County. Perfilio and Giglio returned to the South Darby Road house in January, apparently with the intention of returning to Texas.

On January 19, 1973, at about 5:30 p.m., police officers of the Hickory Township Police Department, the

Pennsylvania State Police, and the Farrell Narcotics Unit, surrounded the South Darby Street residence. Armed with a search warrant based on information given by an informant, Captain McFarland of the Narcotics Unit announced his identity and the purpose of the search. The police saw a person at the window and heard what sounded like a person running inside the house. After waiting about a minute, the captain ordered that his men break down the door.

Upon entry into the house, the police found appellant Giglio downstairs near the kitchen. Appellant Devine was discovered leaving his bedroom and coming into the hallway. Perfilio and a fourth occupant of the residence were alone in separate bedrooms.

The subsequent search revealed almost eighteen pounds of marijuana, an electric burner suitable for smoking marijuana, and a suitcase having traces of marijuana, all of which were located in an otherwise empty room. A small quantity of marijuana was discovered in Devine's bedroom. Two "bags" were found in the living room area which Giglio was leaving when the police entered the house. No drugs were discovered in the bedrooms occupied by Perfilio or the other occupant.

Appellants and Perfilio were charged with unlawful possession of marijuana, conspiracy to unlawfully possess marijuana with intent to deliver, and conspiracy to unlawfully possess marijuana under the Uniform Controlled Substance, Drug, Device and Cosmetic Act.[1] On April 30, 1973, the court below heard the appellants' motions to suppress the evidence seized in the January raid. The only issue was the sufficiency of the probable cause as stated in the affidavit in support of the search warrant. The court denied the motions. Subsequently, appellants and Perfilio were tried and found guilty on all charges on June 1, 1973. The court denied appellants' motions in

---

1. Act of April 14, 1972, P.L. 233, No. 64, §1, et seq., 35 P.S. §780-101, et seq.

arrest of judgment and for a new trial, but granted defendant Perfilio's motion because there was insufficient evidence to show that he possessed any of the contraband.[2]

At the suppression hearing the only evidence introduced by the parties was the warrant that stated the basis for the search. The affidavit presented the following information: "On January 18, 1972,[3] Captain Fred Madasz of the Farrell P.D. received information from a reliable confidential informant who has proven reliable on at least four prior occasions when said informant furnished him with information that was verified and which pertained to narcotic law violations and which assisted in the investigation of both narcotic and burglary cases by Captain Madasz. The information received from the informant was that Dominic Giglio and James Devine and numerous other unknown persons were using a residence on South Darby Road in Hickory Township for cutting, bagging and processing marijuana, LSD, barbiturates and amphetamines. The house was described as being a big farm type house with two outbuildings and being the first house on the right-hand side going south off Route 62. The two named persons have been known to members of the Farrell Narcotics and Vice Squad as users of and distributors of dangerous and narcotic drugs for the past two years. The informant also stated that the named persons were using a blue car with Pennsylvania registration plates and that they were cutting

2. Because we conclude that the warrant was improperly issued, we need not reach appellants' other two contentions that were denied below: first, that cross-examination of one character witness was prejudicial and second, that the evidence of possession of the drugs was insufficient.

3. The warrant was executed on January 19, 1973. The appellants argue that the court cannot read the date as 1973 and that, therefore, the warrant was based on stale data. We find no merit in appellants' contention. Cf. *United States v. Ventresca*, 380 U. S. 102 (1965); *United States v. McKenzie*, 446 F. 2d 949 (6th Cir. 1971).

a large amount of marijuana for distribution to Edinboro College on Friday, January 19, 1972. A check of the Farrell Narcotics Squad records verified that a 1969 Pontiac G.P. dark blue Pennsylvania registration No. 866-735 was registered to James P. Devine, 241 Lunn Boulevard, Farrell, Pennsylvania. On January 19, 1972, at approximately 3:00 P.M., Sergeant Kenneth Green of the Farrell Narcotics Squad drove down South Darby and verified the dwelling and outbuildings that matched the description given by the informant located as the first house on South Darby Road on the west side and at that time saw the vehicle described as owned by James P. Devine parked behind the one and one-half story white frame outbuilding. Affiant also believes Sergeant Green to be a reliable person who has been a Farrell police officer for over four years."

The sufficiency of a search warrant when the probable cause is supplied by an informant is governed by three United States Supreme Court decisions. In *Aguilar v. Texas,* 378 U.S. 108 (1964), the Court struck down a search warrant issued on the following affidavit: "Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates, and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law." The Court underscored the need for the neutral and detached magistrate to have sufficient facts before him to find probable cause. The *Aguilar* warrant was found wanting because it was based on mere conclusions that the petitioner possessed narcotics. The affidavit contained no allegation that the affiant or his source had personal knowledge of that fact.

In *Spinelli v. United States,* 393 U.S. 410 (1969), the Court clarified its decision in *Aguilar* and explained the two-pronged test applicable to searches based on tips from informants: "First, the application [for the war-

rant in *Aguilar*] failed to set forth any of the 'underlying circumstances' necessary to enable the magistrate independently to judge the validity of the informant's conclusion that the narcotics were where he said they were. Second, the affiant-officers did not attempt to support their claim that their informant was ' "credible" or his information "reliable." ' " 393 U.S. at 413. In *Spinelli,* the F.B.I. had in fact garnered more information than the police had in *Aguilar*. The F.B.I. had followed Spinelli to St. Louis, Missouri, and observed him enter an apartment. An agent then discovered that two phones were listed at the apartment. Further, Spinelli was a known gambler. Finally, the F.B.I. had been informed by a "confidential reliable informant" that Spinelli was running a gambling operation at the St. Louis apartment. The Court held that the informant's tip did not amount to probable cause. Although the affiant swore that the informant was reliable, he offered no basis for that belief. Nor did the affiant's recitation indicate the circumstances under which his informant had acquired his information. "We are not told how the FBI's source received his information—it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable. . . . In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor . . . or an accusation based merely on an individual's general reputation." 393 U.S. at 416.

The problem of probable cause based on information given by an unidentified informant was addressed again in *United States v. Harris,* 403 U.S. 573 (1971). Although the lower court in the instant case read *Harris* as relax-

ing the *Aguilar-Spinelli* criteria, our reading of *Harris*[4] reveals no such relaxation, but rather a reiteration of the two-pronged test set forth in *Aguilar*. The second prong was met in *Harris*: "While a bare statement by an affiant that he believed the informant to be truthful would not, in itself, provide a *factual* basis for crediting the report of an unnamed informant, we conclude that the affidavit in the present case contains an ample factual basis for believing the informant. . . ." 403 U.S. at 579. The *Harris* affidavit also met the first prong of the test: ". . . [The affidavit]s purport[s] to relate the personal observations of the informant—a factor that clearly distinguishes *Spinelli*, in which the affidavit failed to explain how the informant came by his information." 403 U.S. at 581.

In the instant case, the appellants do not challenge the warrant for a failure to meet the second prong of the *Aguilar* test. The warrant cites the basis of the affiant's belief that the informant is reliable: "Captain Fred Madasz of the Farrell P.D. received information from a

---

4. The affidavit in *Harris* reads as follows: "Roosevelt Harris has had a reputation with me for over 4 years as being a trafficker of nontaxpaid distilled spirits, and over this period I have received numerous information [sic] from all types of persons as to his activities. Constable Howard Johnson located a sizeable stash of illicit whiskey in an abandoned house under Harris' control during this period of time. This date, I have received information from a person who fears for their [sic] life and property should their name be revealed. I have interviewed this person, found this person to be a prudent person, and have, under a sworn verbal statement, gained the following information: This person has personal knowledge of and has purchased illicit whiskey from within the residence described, for a period of more than 2 years, and most recently within the past two weeks, has knowledge of a person who purchased illicit whiskey within the past two days from the house, has personal knowledge that the illicit whiskey is consumed by purchasers in the outbuilding known as and utilized as the 'dance hall,' and has seen Roosevelt Harris go to the other outbuilding, located about 50 yards from the residence, on numerous occasions, to obtain the whiskey for this person and other persons."

reliable confidential informant who has proven reliable on at least four prior occasions...." The appellants do point to the absence of any information by which the issuing magistrate could have known how the informant obtained his information. Therefore, the first prong of the *Aguilar* test is clearly not satisfied. The remaining details in the warrant do not add information that would lead a magistrate to conclude that the appellants were engaged in criminal activity. The information that appellants resided at the farmhouse, that in fact there was a farmhouse at the specified location, that a blue Chevrolet was parked at that address, was in no way corroborative of drug-related activity. There is no basis in the warrant to credit the information that appellants were "known users of and distributors of dangerous and narcotic drugs." Cf. *Spinelli,* supra. The magistrate was left free to speculate whether any prior arrests had occurred or whether mere rumor was the basis for that information.

Because the warrant lacked an adequate statement of the source of the informant's information, probable cause was not shown and the magistrate should not have issued the search warrant that led to the discovery of the contraband. Therefore, the evidence should have been suppressed. The judgments of sentence are reversed and the cases remanded for a new trial consistent with this opinion.

———

DISSENTING OPINION BY VAN DER VOORT, J.:

These are direct appeals from convictions before a Judge and a jury of conspiracy as to unlawful possession of marijuana with intent to deliver; conspiracy as to unlawful possession of marijuana; of two charges of unlawful possession of marijuana; one being of thirty grams or less, the other being of more than thirty grams. The appellants are asking us to upset these convictions for three reasons, first because they claim that the affidavit upon which the Magistrate issued a search warrant

did not show "probable cause" for the search, second because the evidence of possession of the drugs was insufficient and, third because the cross examination of one character witness was "prejudicial".

The appellants, in September of 1972, had rented a ten-room farmhouse on South Darby Road in Hickory Township, Mercer County. On January 19, 1973, officers of the Farrell Police Department and a narcotics official secured a search warrant for these farmhouse premises. At about 5:30 P.M. on that day, the officers went to the main entrance of the house, knocked on the door and saw someone pull back a curtain or blind on the inside. The officers announced that they were police and had a search warrant and ordered that person to open the door. The curtain dropped back and the officers heard someone moving inside away from the door. The officer in charge waited for a period estimated to be between thirty seconds and a minute for someone to open the door. When no one responded by opening the door, forcible entry was made.

A search of the premises disclosed a total of eighteen pounds of marijuana and a small scale suitable for weighing small amounts of the drug for delivery by dealers.[1] There was also found a bag of baggies suitable for bagging marijuana for distribution.

––––––
1. The house was sparsely furnished. The details of the search disclosed in various places throughout the house six kilos of marijuana in a large garbage bag together with two one pound bags of marijuana placed on the floor next to a suitcase, a glass bowl with particles in it, an electric burner suitable for smoking marijuana and a suitcase with marijuana particles in it. On a coffee table were found loose marijuana, roach holders, and marijuana seeds. On the couch by the coffee table were two bags of marijuana under cushions at each end. On a T.V. set was found a large paper bag containing a plastic bag which in turn held bags of marijuana seeds, stems and marijuana. Next to the scale on the kitchen table was a brown paper bag enclosing a white glassine bag with tea inside. (Tea is commonly used as a material for cutting marijuana.)

Considering the first reason alleged by the appellants to entitle them to be let off from their convictions, when the officers applied for a search warrant they made an affidavit to the Magistrate in support of its issuance and stated to him as follows:

"On 1/18/72, Capt. Fred Madasz of the Farrell P.D. received information from a reliable confidential informant who has proven reliable on at least four prior occasions when said informant furnished him with information that was verified and which pertained to narcotic law violations and which assisted in the investigation of both narcotic and burglary cases by Capt. Madasz. The information received from the informant was that Dominic Giglio and James Devine and numerous other unknown persons were using a residence on S. Darby Rd. in Hickory Twp. for cutting, bagging and processing marijuana, L.S.D., Barbiturates and amphetamines. The house was described as being a big farm-type house with two outbuildings, and being the first house on the right hand side going south off Rt. 62. The two named persons have been known to members of the Farrell Narcotic and Vice Squad as users of and distributors of dangerous and narcotic drugs for the last two years. Informant also stated that the named persons were using a blue car with Pa. registration plates and that they were cutting a large amount of marijuana for distribution to Edinboro College on Friday, Jan. 19, 1972. A check of the Farrell Narcotic Squad Records verified that a 1969 Pontiac G.P., dark blue, Pa. Registration #866-735 was registered to James P. Devine, 241 Lunn Blvd., Farrell, Pa. On 1/19/72, at approximately 3:00 P.M., Sgt. Kenneth Green of the Farrell Narcotic Squad drove down S. Darby and verified a dwelling and outbuildings that matched the description given by informant located as the first house on S. Darby Rd., on the west side, and at that

time saw the vehicle described as owned by James P. Devine parked behind the 1½ story white frame outbuilding. Affiant also believes Sgt. Green to be a reliable person who has been a Farrell Police officer for over four years."

The appellants claim that the rulings in the cases of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) ; and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) make this affidavit insufficient. I find no such effect in *Aguilar* and *Spinelli*. Those two cases established the principles that police officers seeking a search warrant must give the Magistrate sufficient facts from which he can make an independent judgment as to the validity of the informant's conclusion and as to his reliability (or credibility). The underlying circumstances given to the Magistrate by the officers were as follows: That Devine and Giglio were using a residence on South Darby Road in Hickory Township where they were cutting, bagging and processing marijuana, L.S.D. and barbiturates and amphetamines; the type of house (a big farmhouse with two outbuildings and its location; the two suspects were using a blue car with Pennsylvania license plates and they were cutting a large amount of marijuana for distribution to Edinboro College on Friday, January 19, 1972. The officers informed the Magistrate in the affidavit that the Farrell Narcotics Squad had determined that Devine owned a 1969 Pontiac G.P., dark blue with Pennsylvania registration plates No. 866-735 and that Devine's registered address was 241 Lunn Boulevard in Farrell, Pennsylvania. The officers further checked and found that the dwelling and outbuilding matched the description given by the informant and that it was located where the informant said it was. The officers checked and located Devine's blue Pontiac parked behind a 1½ story white outbuilding on the farmhouse premises. Certainly from the facts given by the informant which were checked and found to be precisely

accurate by the investigating officers, the Magistrate could reasonably infer that the informant had gained his information in a reliable way.

The officers further told the Magistrate that their informant was a reliable person and had proven reliable on at least four prior occasions on which he had furnished one of the officers with information which was subsequently verified which related to narcotics law violations and which assisted in the investigation of both narcotic and burglary cases. Certainly from this statement by the officer making the affidavit the Magistrate could reasonably infer that the informant was a credible or reliable person. Here we have a situation where what the informant told the police officers was exactly right; what the officers told the Magistrate was exactly right and the decision made by the Magistrate was exactly right.

The majority would have us say that all this must be thrown overboard, that although all parties were in fact correct and just in their words and actions that our law is such that all their efforts expended in uncovering the criminal conduct in this case shall go for naught. When are we in the judiciary going to stop burying our heads in the sand?

It is true that upon reading the book, *The Gulag Archipelago* by Aleksandr I. Solzhenitsyn, one learns of the horrors of unbridled searches. It is also true that in reaction to the fear of unbridled searches we have gone overboard in retarding the Magistrate and paralyzing law enforcement with unbridled restrictions upon searches. All kinds of criminal activity and harmful forces operate under the eyes, ears and noses of police officers and the law makes them powerless to intervene. This is so to such an extent that law enforcement is gradually losing control over criminal activity.

Turning to the second claim of the appellants that the evidence of possession of the drug was insufficient to sustain their conviction, there is little merit to this conten-

tion. Devine and Giglio were co-lessees of the farmhouse in question. They had possession and control of both the inside and outside of the premises with marijuana literally strewn all over the house, together with the scales, bags, baggies and tea leaves. There was ample evidence to sustain the conclusion by the jury that both Devine and Giglio had knowing and intentional possession of the drugs together with the control of them.

The third issue raised by the appellants arises out of the cross examination of a character witness, one Reverend Stewart for appellant-defendant Devine as to his good reputation in the community for truth and veracity. The attorney for the Commonwealth asked Reverend Stewart if he had seen the quantity of marijuana being carried into the courtroom before the commencement of the court session and if it was not true that he had remarked "what a waste so many people could be enjoying that." He admitted that he had so remarked. On re-direct examination he said, "We had been joking the whole day, they (the officers) are aware of that". The jury was entitled to consider this remark of Reverend Stewart to determine whether or not he was biased in favor of the use of marijuana. A witness may be impeached on matters not brought out in direct examination. *Commonwealth v. Cheatham*, 429 Pa. 198, 202-203, 239 A.2d 293 (1968). If Reverend Stewart favored the use of marijuana he can very well be biased in favor of the appellant Devine.

I would not upset the conviction of the appellants, but would affirm the judgment of sentence.

WATKINS, P.J., and PRICE, J., join in this dissenting opinion.