363 A.2d 1201

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Lee Earl FRYE.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Patricia MEDICH (two cases).**

Superior Court of Pennsylvania.
Sept. 27, 1976.

146

Albert M. Nichols, Dist. Atty., James J. Conte, Asst. Dist. Atty., Greensburg, for appellant.

William Manifesto, Pittsburgh, for appellee.

CERCONE, Judge:

This is an appeal by the Commonwealth from the order of the court below suppressing evidence which was seized pursuant to a warrant authorizing a search of appellee Frye's residence.[1]  For the reasons that follow, we reverse the lower court's suppression order.

On February 22, 1975, search warrants were issued for both Frye's Rambler automobile and his residence.  The affidavits for both warrants recited, in pertinent part:

"I, the affiant, received information from a confidential reliable informant who called this office by phone on 2–22–75 and stated that he was in the presence of Lee Frye as late as 2–22–75 and witnessed subject sell a kilo brick of marihuana to an unknown white male from a white Rambler vehicle license number 98–388, in the parking lot across from Palmers Restaurant in Turtle Creek, Pa., Allegheny County.  Lee also told the buyer that if he needed anymore, to call him after 10:30 P.M., 2–22–75 and no later than 1:30 A.M. 2–23–75 because this would be the best hours to catch him at

1.  It is well settled that the Commonwealth is entitled to appeal from a suppression order which either necessitates the termination of the prosecution or substantially impairs the Commonwealth's presentation of its case.  *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304, cert. denied, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963); *Commonwealth v. Gullet,* 459 Pa. 431, 329 A.2d 513 (1974).

home because he would be out taking care of business. Informant has given information in the past which has proven to be true and correct and which lead to the arrest of Victor Danielson for VCSDD & CA."

The search of Frye's residence resulted in the seizure of four plastic bags of marijuana and related drug paraphernalia. Numerous firearms and weapons were also found in the home. The search of the Rambler resulted in the confiscation of a revolver. Following a suppression hearing, the lower court ruled that the evidence obtained from the Rambler was admissible. However, the court further held that all evidence seized from the house must be suppressed. It is from this latter order that the instant appeal was lodged.

The sole issue raised on this appeal is whether the search warrant for Frye's residence was issued upon a sufficient showing of probable cause.

In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the United States Supreme Court delineated the constitutional guidelines for issuing a search warrant when probable cause is based upon information supplied to the affiant by an informant. The affiant must provide sufficient information for the issuing authority to make two independent determinations: "First, the affidavit must set forth the underlying circumstances from which the informer concludes that the items to be seized are at the place to be searched. Second, the affidavit must set forth the underlying circumstances whereby the affiant has concluded that the informer is credible and his information reliable." *Commonwealth v. Early*, 236 Pa.Super. 60, 64, 345 A.2d 197, 200 (1975); *Commonwealth v. Kline*, 234 Pa.Super. 12, 335 A.2d 361 (1975); *Commonwealth v. Devine*, 233 Pa.Super. 99, 334 A.2d 725 (1975). Instantly, appellees contend that the affidavit did not contain sufficient underlying circumstances from which the

148

issuing authority could conclude that there was probable cause to believe that marijuana was present in the Frye residence. We disagree.

At the outset, it must be recognized that probable cause exists when the facts and circumstances set forth in the affidavit are sufficient to warrant a man of reasonable caution in the belief that the contraband to be seized was in the specified place. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *United States v. Lucraz*, 430 F.2d 1051 (9th Cir. 1970). We must further be mindful "that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray v. Illinois*, 386 U.S. 300, 311, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); and that their determination of probable cause should be paid great deference by reviewing courts. *Jones v. United States*, 362 U.S. 257, 270–271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)." *Spinelli*, supra, 393 U.S. at 419, 89 S.Ct. at 590, 21 L.Ed.2d at 645.

With the above principles in mind, we examine the instant affidavit. Appellees emphasize the fact that the affidavit is devoid of any statement by the informant that he observed marijuana at the Frye residence or that he had ever been at the premises. Appellees also point out that the informant did not draw any inferences that Frye stored marijuana in his house. Rather, it was the police and the issuing authority who concluded that Frye was storing marihuana in his residence. Was there prob-

able cause to support such a conclusion? Common sense compels an affirmative answer. The informer stated that he heard Frye tell the buyer in the parking lot "that if he needed anymore, to call him after 10:30 P.M., 2–22–75 and no later than 1:30 A.M. 3–23–75 because this would be the best hours to catch him at home because he would be out taking care of business." Given this statement, which indicates at the very minimum that Frye was taking telephone orders in furtherance of his illicit business at his home; the fact that there was direct evidence that Frye was trafficking in marijuana; and the fact that marijuana because of its illegality, value, and bulk must be secreted in a "safe" location; a man of reasonable caution would be warranted in believing that marijuana was being kept at Frye's residence. See *United States v. Lucraz*, supra; *United States v. Rahn*, 511 F.2d 290 (10th Cir. 1975); *Commonwealth v. Vynorius*, 336 N.E.2d 898 (Mass.1975), and cases cited therein.

Finally, we reject the appellees' contention that our recent decision in *Commonwealth v. Kline*, supra, is controlling on the instant issue. In *Kline* two young girls informed the police that they had requested some LSD from one Morgan Arthur. The girls further stated that Arthur returned with the drug after obtaining it from his apartment. Another informant related that Arthur had been selling various drugs during the relevant time period. None of the informants, however, had actually observed Arthur go to his apartment and obtain any drugs. On these facts, the lower court held, and we agreed, that there was no probable cause to search Arthur's apartment since the affidavit failed to contain sufficient underlying circumstances for the informants to conclude that Arthur kept the drugs in his apartment. In the case at bar, however, the nexus between the evidence to be seized and the place to be searched was provided by Frye's admission that he was conducting at least part of his unlawful operations from his home.

■■ While it is obvious that there existed other places where the marijuana *might* have been secreted, it is also true that "[t]he standard applied by the magistrate is not that of certainty that the objects sought will be found as a result of the search." *Porter v. United States*, 335 F.2d 602, 604 (9th Cir. 1964), cert denied 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574 (1965). Under the unique facts and circumstances of this case, and mindful of the preference to be accorded the issuing authority's decision in doubtful or marginal cases, *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), we hold that the warrant for the dwelling was issued upon probable cause.

Accordingly, the order of the court below, suppressing the evidence seized from the Frye residence, is reversed. The cause is remanded for proceedings consistent herewith.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge (dissenting).

Since I do not think the search warrant for Frye's residence was issued upon a sufficient showing of probable cause, I would affirm the orders of the lower court.

The information set forth in the application for a search warrant must be sufficient "to enable the magistrate independently to judge of the validity of the informant's conclusion that the narcotics were where he said they were." *Spinelli v. United States*, 393 U.S. 410, 413, 89 S.Ct. 584, 587, 21 L.Ed.2d 637 (1969). Here the informant never said the contraband was located at appellant's residence, nor did he allege that appellant told the buyer that it was stored there. The police and the issuing authority drew that conclusion on their own.

The majority says that conclusion was justified by Frye's statement that the buyer could call him at home. That statement alone, however, did not amount to prob-

able cause that the marijuana was at appellant's home. At most it raised a suspicion that it might be there. Suspicion does not provide a sufficient basis for issuing a search warrant. *Commonwealth v. Jackson*, 461 Pa. 632, 337 A.2d 582, *cert. denied*, 423 U.S. 999, 96 S.Ct. 432, 46 L.Ed.2d 376 (1975). Nor does probable cause to believe that a man has committed a crime on the street necessarily give rise to probable cause to search his home. *Commonwealth v. Kline*, 234 Pa.Super. 12, 335 A.2d 361 (1975).