390 A.2d 225

**COMMONWEALTH of Pennsylvania**

**v.**

**Duayne YUCKNEVAGE and Rocke S. S. Tucker, Appellants.**

Superior Court of Pennsylvania.

Submitted June 23, 1977.

Decided July 12, 1978.

20

George E. Goldstein and William J. Honig, Philadelphia, for appellants.

Roger Markley, Assistant District Attorney, Doylestown, and Stephen B. Harris, First Assistant District Attorney, Warrington, for Com., appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

On August 1, 1973, a Pennsylvania State Trooper in Bucks County got a warrant to search a house in New Hope.

Troopers executed the warrant at about 9:00 p. m. that night and found drugs that incriminated appellant Rocke Tucker. Next, the troopers got a warrant to search appellant Duayne Yucknevage's car, which was parked nearby, and found more drugs. Both appellants moved to have the drugs suppressed as evidence. Their motions were denied, and they were convicted of conspiracy and possession of controlled substances with intent to deliver in violation of the Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 13, as amended, 35 P.S. § 780–113(a)(30).

−1−

Appellants contend that the warrant to search the house was invalid because the trooper's application for the warrant contained deliberate misstatements of material facts, *Commonwealth v. D'Angelo*, 437 Pa. 331, 236 A.2d 441 (1970), that is, of facts necessary to support a finding of probable cause, *Commonwealth v. Tucker*, 252 Pa.Super. 594, 384 A.2d 938 (1978); *Commonwealth v. Jones*, 229 Pa.Super. 224, 323 A.2d 879 (1974).

The application stated as follows: The trooper who swore to the application was relying on information given him by Robert J. Vannozzi, a member of the New Jersey State Police engaged in undercover investigation. Vannozzi had arranged to meet one John Doe—later identified as appellant Tucker—at 4:30 p. m. on August 1, 1973, to discuss buying a large quantity of hashish. When he went to the meeting Vannozzi saw Tucker "coming from a certain residence in New Hope to the meeting as previously arranged;"[1] after the meeting he saw Tucker go back inside. A third person, one Gruskin, who had arranged the meeting, told Vannozzi that Tucker lived in the house. At the meeting Tucker said that he was 5 pounds short of the 13 pounds of hashish Vannozzi wanted, but that he would be getting more hashish from the city that night. It was

1. Testimony revealed that Vannozzi was in his car and that the meeting was conducted while the parties drove about.

therefore agreed that they would meet again at 8:00 p. m. that night, when Vannozzi would buy the hashish. Vannozzi displayed $15,000 in cash, and Tucker gave Vannozzi a small quantity of something that later proved to be hashish.

The application then made the statements that appellants contend represent deliberate misstatements of material facts: that a confidential informant had told Vannozzi that he had previously met with Tucker in Tucker's house, which was the one Vannozzi saw Tucker come out of; and that Tucker said that if Vannozzi wanted, the 8:00 p. m. transaction would be in that house. At the suppression hearing, however, Vannozzi testified that there was no discussion of where the 8:00 p. m. transaction was to take place, although it was agreed that the parties would meet at Vannozzi's car in the street near Tucker's house, as they had for the 4:30 meeting. N.T. Suppression Hearing at 57. Furthermore, at trial Vannozzi denied telling the trooper who swore to the application that an informant had told him he had previously met with Tucker in Tucker's house.

In one sense these misstatements were material, for had they been true there could be no question about probable cause to issue the warrant: if a person agrees to sell drugs in his house at a certain time, the police may reasonably conclude that a bit before that time they will find drugs there. In deciding whether a misstatement is material, however, the test is not whether the misstatement *strengthens* the application, but rather it is *essential* to it. This is determined by deleting the misstatement from the application, and then seeing whether the application still states enough to show probable cause. *Commonwealth v. Tucker, supra* ; *Commonwealth v. Jones, supra.*

In following this procedure our first step must be to disregard Gruskin's statement that Tucker lived in the house, for the application states no reason to believe that Gruskin was a reliable source of information. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). When we then examine the information

left, we see that we have a close case, very similar to several other cases we have had.

In *Commonwealth v. Kline*, 234 Pa.Super. 12, 335 A.2d 361 (1975), we found no probable cause. A seller told two girls he would sell them drugs; he had no drugs with him, but drove off and returned with some. No information was stated to support the girls' inference that he had driven to his home for the drugs and that therefore more could be found there. In *Commonwealth v. Frye*, 242 Pa.Super. 144, 363 A.2d 1201 (1976), however, we found probable cause: "the nexus between the evidence to be seized and the place to be searched was provided by Frye's admission that he was conducting at least a part of his unlawful operations from his home." 242 Pa.Super. at 149, 363 A.2d at 1204. In *Commonwealth v. Forster*, 253 Pa.Super. 433, 385 A.2d 416 (1978), the informant overheard the seller say to the buyer that he still had some drugs left; when the informant asked the buyer the identity of the seller, the buyer said the seller "was at room 720." The seller was a college student, and room 720 was in a dormitory. In these circumstances a majority of this court interpreted the informant's statement to mean not only where the seller could be found but where a sale could be immediately consummated. On this interpretation, probable cause to search room 720 was shown.

Here, the showing of probable cause is not so clear as in *Frye*, for considering only the statements properly in the application, Tucker did not say in so many words either that he was making drug sales from his house, or that he would make the 8:00 p. m. sale of 13 pounds of hashish there. However, the showing of probable cause is clearer than in *Kline*, and at least as clear as in *Forster*. Tucker was seen leaving and returning to the house, a fact supporting the inference that he lived there. Furthermore, at the 4:30 meeting Tucker had drugs on his person, which was not true in *Kline*. Tucker's statement then, that he was 5 pounds short of the 13 pounds of hashish Vannozzi wanted, supports

26

the inference that the hashish on Tucker's person had come from a supply in the house. Finally, the fact that the place of the 8:00 p. m. meeting was not discussed is not dispositive. If two persons meet outside a certain house at 4:30, and agree to meet again at 8:00, the very fact that they do not say where they will meet again may suggest that it will be at the same place.

At the 4:30 meeting Tucker said he was getting more hashish from the city that night. Given the inference—just discussed—that when he said this, he already had some hashish in the house, the likelihood was that when he got more hashish from the city he would add it to the supply in the house, and then take from this enlarged supply the 13 pounds to sell Vannozzi at the 8:00 p. m. meeting, outside, if not inside, the house.[2]

–2–

 · Appellants next argue that the warrant was invalid because it authorized a search of the entire house although the house was made up of two separate dwelling units.[3] In *Commonwealth v. Copertino*, 209 Pa.Super. 63, 224 A.2d 228 (1966), this court stated the rule that for search warrant purposes, separate dwelling units must be treated as separate dwellings, but we permitted an exception where there is cause to believe that the premises covered by the warrant are being used as a single unit. Here, appellants fail to describe any features of the exterior of the house that

**2.** Given our conclusion that the application showed probable cause, with the misstatements deleted, we do not reach the question of whether the misstatements were deliberate. When a misstatement is immaterial, it does not matter whether it was deliberate.

**3.** Appellants argue also that the application for both warrants, for the house and for Yucknevage's car, were invalid because in each case the averments of fact spilled over onto the reverse side of the first page, and that side was not signed by the affiant nor attested to by the magistrate. However, the first page of each application was signed by the affiant and attested to by the magistrate, and in each case the first page contained a note that its contents continued onto the reverse side. That was enough.

would have indicated two dwelling units.[4] Appellants argue that the interior basement door was boarded up, so that the police had to enter the basement from the outside; that only Tucker's possessions were found in the basement; and that none of Tucker's possessions was found on the first and second floors. However, these factors merely amount to indications by which the police could have known, after they had searched, that they had stumbled upon two dwelling units.

■ In this regard, we also note a question of standing. If the warrant were to be judged (as we have not judged it) as authorizing too extensive a search, only those unjustly included in the too extensive search may be said to be aggrieved; that is, if there was probable cause to search only Tucker's basement dwelling unit, and if the officers had found drugs on the first or second floors, those drugs could not be admitted against those persons who lived on the first or second floors. Here, however, the drugs on which the prosecution was based were found during the search of Tucker's dwelling unit only; he was therefore not "aggrieved" by a too-extensive search. See generally, *Commonwealth v. Treftz*, 465 Pa. 614, 351 A.2d 265 (1976); *Commonwealth v. Mader*, 253 Pa.Super. 58, 384 A.2d 974 (1978); *Commonwealth v. Tasco*, 227 Pa.Super. 144, 323 A.2d 831 (1974); Pa.R.Crim.P. 323(a).

–3–

Appellants next argue that the warrant to search the house was unlawfully executed. The facts of the search are as follows:

When the Pennsylvania state troopers arrived at Tucker's house, they found the New Jersey officers—Vannozzi and others—standing outside with Tucker, who was handcuffed, having evidently kept the 8:00 p. m. appointment. Pennsylvania officers knocked on the door of the house, called

4. Indeed, testimony conflicted as to whether there were two dwelling units; the existence of a stove and sink in appellant's room is somewhat uncertain.

"State Police", and proceeded to break in the door. The warrant had not yet arrived; it was brought to the scene about five minutes later. The officers searched the first two floors, and then read the warrant to Tucker. As the officers could not get into the basement area by the interior door they went around to an outside door. A large dog menaced the officers in front of that door. The officers asked Tucker to chain the dog up; he asked them not to shoot "my dog", and held the dog off. In Tucker's presence, an officer rapped on the door and, receiving no answer, forced it open. The room was dark. Turning on a light, the officer found appellant Yucknevage, Gruskin, and a large supply of drugs.

[7, 8] We may assume that the initial entry on the first floor was unlawful for failure to knock and announce. As to Tucker, however, that illegality was cured by the events at the basement door. There, the officers had reason to believe they were outside Tucker's room—it was guarded by Tucker's dog—and they read Tucker the warrant and opened the door in his presence. The entering officer testified that he knocked only briefly because he assumed no one was inside.[5] The announcement requirement is waived if the police know that the occupant is already aware of their purpose. *Commonwealth v. Clemson*, 234 Pa.Super. 191, 193 n. 1, 338 A.2d 649, 650 (1975), *Commonwealth v. Johnson*, 223 Pa.Super. 83, 289 A.2d 733 (1972).

–4–

■ Appellant Yucknevage argues that the warrant for the search of his car was unlawfully issued. Since we have decided that the search of the house—at least of Tucker's dwelling unit—was lawful, the search of the car was not an unlawful "fruit." Yucknevage argues, however, that the information in the application for the warrant did not show

5. The New Jersey police officers outside had told the Pennsylvania troopers that two other persons were in the house—Yucknevage and Gruskin—but considering the locked door to the basement, this was not enough to make the Pennsylvania officer's assumption unreasonable.

probable cause to search the car. The application said that Tucker had said he was receiving a shipment of drugs at 8:00 p. m.; that Yucknevage had been found on the premises with some 14 pounds of hashish at around 9 p. m.; and that the officers had determined that the car was parked near Tucker's house and was registered to one George Yucknevage. These facts supported the inference that Yucknevage may have brought the shipment Tucker was awaiting.[6]

–5–

Finally, Yucknevage argues that at trial there was insufficient evidence that he had control, and intent to exercise control, over the drugs found in his car. *Commonwealth v. Samuels*, 235 Pa.Super. 192, 340 A.2d 880 (1975). Control and intent to control may be inferred from all the circumstances. *Commonwealth v. Cash*, 240 Pa.Super. 123, 367 A.2d 726 (1976). Keys taken from Yucknevage opened the trunk of the car. In the passenger compartment,[7] two "blocks" of hashish were found under the front seat; they were identical in chemical composition, physical appearance, and packaging to the hashish previously found in Tucker's basement. We must first accept as true all the evidence upon which the trier of fact could properly have based the verdict, and then ask whether that evidence, with all reasonable inferences from it, was sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Fortune*, 456 Pa. 365, 367, 318 A.2d 327, 328 (1974). Applying this test, we find the evidence sufficient.

Affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

**6.** It is arguable that the police needed no warrant to search the car. *See Comm. v. Maione*, 227 Pa.Super. 239, 324 A.2d 556 (1974).

**7.** The officers could not recall whether the passenger compartment was locked.