J-S02035-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| VALENTINO GAGLIARDI | |
| Appellee | No. 966 EDA 2014 |

Appeal from the Order Entered on February 21, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0002666-2013

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ROMEO P. GAGLIARDI | |
| Appellee | No. 981 EDA 2014 |

Appeal from the Order Entered on February 21, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0014776-2012

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ROMEO GAGLIARDI | |
| Appellee | No. 1004 EDA 2014 |

Appeal from the Order Entered on February 21, 2014

In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0002665-2013

BEFORE:  MUNDY, J., OLSON, J., and WECHT, J.

DISSENTING MEMORANDUM BY WECHT, J.:         **FILED OCTOBER 05, 2015**

In this consolidated appeal, the Commonwealth appeals the trial court's February 21, 2014 order suppressing evidence seized pursuant to the execution of a search warrant for want of probable cause.  The learned Majority finds error in the trial court's reasoning for suppressing the evidence in a multitude of ways, including the trial court's mischaracterization of, and, consequently, erroneous application of, the standard of review, as well as the court's conclusion that the confidential informant was unreliable.  I have no significant disagreement with those portions of the Majority's memorandum.

However, I depart with the Majority on the crucial issue in the case: whether the information contained in the affidavit of probable cause demonstrated a fair probability that additional narcotics would be found in the residence in question.  In other words, in my view, the Majority incorrectly concludes that the information contained within the four corners of the affidavit established a nexus between drug transactions on the street and Romeo Gagliardi's residence.  Hence, I respectfully dissent.

On August 23 and 24, 2012, Philadelphia Police Officer Bruce Cleaver, along with his partner, Officer Stevens, conducted two controlled purchases of narcotics using a confidential informant.  The informant had indicated to

Officer Cleaver that a white male named "Romeo," who was residing at 2627 Emily Street, was selling drugs in the South Philadelphia area. On the two days in question, the officers provided the confidential informant with marked currency, and observed as the informant contacted "Romeo" and set up a drug transaction. The informant and "Romeo" agreed to conduct the transactions under a tree near 26th and Dudley Streets. On both occasions, the informant went to the tree and waited for "Romeo," who would exit the Emily Street residence and walk to the tree. Once both parties were there, the informant would hand the marked currency to "Romeo," and "Romeo" would hand the informant a clear packet, which was later determined to contain cocaine. "Romeo" then would walk away from the tree. Notably, after the first transaction, "Romeo" was observed making a second transaction in the same location, but this time the deal occurred inside of a vehicle that had pulled up to the location. After he made the second deal with the person in the vehicle, "Romeo" then returned to 2627 Emily Street. After the transaction that occurred on the second day with the informant, "Romeo" went directly back to 2627 Emily Street.

Based upon his observation, Officer Cleaver applied for a search warrant for the residence located at 2627 Emily Street. Officer Cleaver also prepared an affidavit of probable cause, which he submitted alongside the warrant application. Officer Cleaver set forth the following in the affidavit of probable cause:

I, P/O Bruce Cleaver #2706, your Affiant, am presently assigned to Narcotic Field Unit South. I have been a sworn Police Officer since November 1998. In my capacity of Police Officer, I have been assigned to the 25th Dist Net, and Highway Patrol. In my course of assignment as Police Officer, I have been involved in hundreds of narcotic arrests. Since being assigned to the Narcotic Bureau, I have worked numerous investigations for violations of the Pennsylvania Controlled Substance Act of 1972. My involvement in these investigations has entailed surveillances, undercover purchases, and the preparation of search and seizure warrants by myself. I have received specialized narcotics-related training given by the Philadelphia Police Department. I have also been trained in courses given on the Federal and State level. My training and experience have made me familiar with the ways in which narcotics are packaged for sales on the street and from houses for illegal sales and distribution. I have received training in the handling of confidential informants being utilized for the purpose of undercover investigations.

Your Affiant, P/O Cleaver #2706, received information from C/I #1349. C/I stated a W/M in his 30's who goes by the name Romeo lives at 2627 Emily Street and sells cocaine in South Philadelphia.

On 8-23-12 P/O Cleaver and P/O Stevens #6301 met with C/I 1349. C/I was checked for narcotics, USC and paraphernalia with negative results and given $100 PRBM (EK41747841A, JB64594258A, EA89277660B, JC86786621B, GF60289673D). C/I made contact with "Romeo" and agreed to meet. The C/I went to 26th and Dudley under a tree. A W/M was observed come out of 2627 Emily Street [*sic*] was identified by the C/I as the male he knew as Romeo. Romeo approached the C/I and they engaged in a brief conversation and the C/I handed Romeo the PRBM. Romeo then handed the C/I a clear packet. Romeo was then observed walk W/B on Mifflin. The C/I then handed over to P/O Stevens a clear zip lock packet containing a chunk of compressed white powder. The C/I checked for narcotics, USC and paraphernalia with negative results. That item tested positive for cocaine and was placed on PR#3061629. Romeo was observed talk [*sic*] on a cell phone and he walked back to the tree where he met the C/I. A white Honda Civic was observed park [*sic*] under that tree and Romeo got into the passenger side. A W/M driver handed Romeo USC and Romeo

handed the W/M driver a clear packet. Romeo exited the Honda and walked back to 2627 Emily and entered the front door.

On 8-24-12 P/O Cleaver and P/O Stevens met with C/I 1349. C/I was checked for narcotics, USC and paraphernalia with negative results and given $100 PRBM (JC30004608A, GL08921446A, IE5595364D, ED44111159C, GJ28611809B). The C/I made contact with Romeo and the C/I went to 26th and Dudley St at the tree. Romeo was observed walk out of 2627 Emily St. He met the C/I and they engaged in a brief conversation. The C/I handed Romeo the PRBM and Romeo handed the C/I a clear packet. Romeo was observed walk back into 2627 Emily. The C/I then handed over to P/O Cleaver a clear zip lock packet containing a white compressed powder. The C/I was again checked for narcotics, USC and paraphernalia with negative results. The item tested positive for cocaine and placed on PR#3061631.

Based upon the above observations and the buys by the reliable C/I who in the past has made buys which led to numerous confiscations of narcotics, USC and paraphernalia, I respectfully request a Search and Seizure Warrant for 2627 Emily St.

Affidavit of Probable Cause, 8/24/2012.

On August 24, 2012, the day of the second controlled purchase, the warrant was approved and executed by police. Romeo Phillip Gagliardi, Romeo J. Gagliardi, and Valentino Gagliardi were inside the residence when the police executed the warrant. Each was arrested after the police searched the residence and found two pounds of marijuana, one hundred and thirty-six grams of cocaine, $9,682 in currency, a digital scale, a razor blade, a nine millimeter handgun, and indicia of residence for Romeo Phillip Gagliardi. All three individuals were charged with possession of a controlled

substance with intent to deliver, possession of an instrument of crime, and criminal conspiracy.[1]

On February 21, 2014, the Gagliardis made a joint oral motion before the trial court, seeking the suppression of the physical evidence obtained via the execution of the search warrant on 2627 Emily Street. Following a brief hearing, and considering only the material contained within the four corners of the affidavit, the trial court concluded that the search warrant was not supported by adequate probable cause. Thus, on that same date, the trial court granted the Gagliardi's motion and suppressed the evidence.

The Commonwealth presents the following question in this appeal: "Did the lower court err by invalidating a search warrant for a house on the ground that the police supposedly lacked probable cause despite arranging controlled buys in which a defendant was observed leaving the house, selling cocaine, and then returning to the house on two days in succession?" **See** Brief for the Commonwealth at 3.

The legal standards governing a review of this issue are well-established:

> Our standard of review in addressing a challenge to the [grant] of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the [defendant] prevailed before the suppression court, we may consider only the evidence of the

_____

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S. §§ 907, 903, respectively.

[defendant] and so much of the evidence for the [Commonwealth] as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. ***Commonwealth v. Bomar***, 826 A.2d 831, 842 (Pa. 2003). Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." ***Commonwealth v. Mistler***, 912 A.2d 1265, 1269 (Pa. 2006) (quoting ***Commonwealth v. Nester***, 709 A.2d 879, 881 (Pa. 1998)). Thus, the conclusions of law of the courts below are subject to our plenary review.

\* \* \*

Article I, Section 8 [of the Pennsylvania Constitution] and the Fourth Amendment [to the United States Constitution] each require that search warrants be supported by probable cause. "The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause." ***Commonwealth v. Edmunds***, 586 A.2d 887, 899 (Pa. 1991) (quoting ***Commonwealth v. Miller***, 518 A.2d 1187, 1191 (Pa. 1986)). "Probable cause exists where the facts and circumstances within the affiant's knowledge[,] and of which he has reasonably trustworthy information[,] are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." ***Commonwealth v. Thomas***, 292 A.2d 352, 357 (Pa. 1972).

In ***Illinois v. Gates***, 462 U.S. 213 (1983), the United States Supreme Court established the "totality of the circumstances" test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause. In ***Commonwealth v. Gray***, 503 A.2d 921 (Pa. 1986), [the Pennsylvania Supreme Court] adopted the totality of the circumstances test for purposes of making and reviewing probable cause determinations under Article I, Section 8. In describing this test, we stated:

Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in *Gates*, the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons who supply hearsay information, **there is a fair probability that contraband or evidence of a crime will be found in a particular place**. . . . It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

\* \* \*

*Commonwealth v. Torres*, 764 A.2d 532, 537-38 (Pa. 2001) (emphasis added).

*Commonwealth v. Jones*, 988 A.2d 649, 654-55 (Pa. 2010) (internal citations modified).

Our cases require the Commonwealth to establish probable cause for the premises to be searched, and not only for the person suspected of criminal activity:

Probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home. . . . [A]n allegation based on an assumption or supposition not supported by the facts is insufficient to support (an inference of) criminal activity in a premises, in spite of the fact that there are plenty of allegations alleged to relate to criminal activity of the individual who is alleged to have lived in the premises.

*Commonwealth v. Kline*, 335 A.2d 361, 364 (Pa. Super. 1975); *see also*

*Commonwealth v. Wallace*, 42 A.3d 1040, 1049-50 (Pa. 2012) ("As the

Superior Court has previously and aptly opined on this point, 'probable cause

to believe that a man has committed a crime on the street does not

necessarily give rise to probable cause to search his home.'") (citing

*Commonwealth v. Heyward*, 375 A.2d 191, 192 (Pa. Super. 1977); *Kline*,

335 A.2d at 364)).  "[T]he lack of a **substantial nexus** between the street

crime and the premises to be searched renders the warrant facially invalid."

*Commonwealth v. Way*, 492 A.2d 1151, 1154 (Pa. Super. 1985)

(emphasis added).  Additionally, a magistrate's determination of probable

cause "must be based [up]on facts described within the four corners of the

supporting affidavit."  *Commonwealth v. Dukeman*, 917 A.2d 338, 341

(Pa. Super. 2007) (citing *Commonwealth v. Smith*, 784 A.2d 182, 184

(Pa. Super. 2001)).

Here, stated simply, there is no information within the "four corners"

of the affidavit of probable cause establishing any "nexus" between Emily

Street and the drug dealing that occurred under the tree near 26th and

Dudley Streets.  *Way*, *supra*.  There are ample facts in the affidavit to

establish Romeo P. Gagliardi's identity and that he resides at 2627 Emily

Street.  However, the affidavit offers no factual basis for concluding that

Romeo P. Gagliardi's putative residence was connected to the drug dealing in

any way.  Although the affidavit offered significant factual bases for

concluding that Romeo P. Gagliardi was a street drug dealer, "[p]robable cause to believe that a man has committed a crime does not necessarily give rise to probable cause to search his home." **Way**, 492 A.2d at 1154.

Unlike the Majority, I believe that this Court's analyses in **Kline** and **Way** are instructive.[2] In **Kline**, the police obtained a search warrant for an apartment after eyewitness complainants identified the defendant as a drug dealer and indicated that the defendant lived in that particular apartment.

_____

[2] Subsequent decisions have distinguished somewhat our holding in **Kline** and, by extension, **Way**. Specifically, this Court has enumerated several types of evidence that are sufficient to establish the "substantial nexus" between the place to be searched and the evidence to be seized. **See Commonwealth v. Davis**, 595 A.2d 1216, 1220-22 (Pa. Super. 1991) (holding that confidential informant's observation of a defendant coming and going from a specific house between three different narcotics sales and had recently obtained a large shipment of narcotics established "probable cause to believe that the objects sought . . . would be found in [the defendant's] home.") (discussed _infra_); **Commonwealth v. Macolino**, 485 A.2d 1134, 1136-38 (Pa. Super. 1984) (holding that police established probable cause to search a home where the affidavit of probable cause contained information from wiretapped conversations emanating from the house discussing narcotics trafficking, and police surveillance of the property, wherein the defendant was observed coming and going from that house while meeting with a known narcotics supplier); **Commonwealth v. Frye**, 363 A.2d 1201, 1204 (Pa. Super. 1976) (holding that a defendant's admission may form the basis for establishing probable cause to search a specific locale, stating that "the nexus between the evidence to be seized and the place to be searched was provided by Frye's admission that he was conducting at least part of his unlawful operations from his home.").

I read these cases as standing for the general proposition that, while the Commonwealth must establish a nexus between the place to be searched and the items to be seized, that burden is not insurmountable. However, the central holding of **Kline** and **Way**—that mere evidence of a suspect's criminal activity and the location of his residence does not establish probable cause to search that residence—remains in force.

Specifically, three different informants stated that they had purchased drugs from the defendant in the preceding week. Although the complainants stated that the defendant kept the drugs that he sold in his apartment, there was no factual basis in the affidavit to support that claim:

> [The suppression court] suppressed the evidence seized pursuant to the warrant because [the suppression court] concluded that although the affidavit contained facts sufficient to establish that [the defendant] was indeed dealing in drugs and lived in the apartment described, it did not contain facts sufficient to establish the basis [up]on which the several informants . . . had concluded that [the defendant] had gone to his apartment to get the drugs.

*Kline*, 335 A.2d at 362-63. On appeal, this Court upheld the suppression court's ruling, stating that assumptions regarding the premises to be searched are insufficient to establish probable cause:

> Here, as far as appears from the affidavit, none of the informants said where the [drugs were.] The [informants] apparently concluded that [the drugs were] in [the defendant's] apartment. However, an affidavit must set forth how information leading to such a conclusion was obtained. *Commonwealth v. Ambers*, 310 A.2d 347, 350 (Pa. Super. 1973); *Commonwealth v. Soychak*, 289 A.2d 119, 124 (Pa. Super. 1972). There is no indication of where the transaction took place, how long it took, how long [the defendant] was gone, or what led the [informants] to conclude that [the defendant] had gone to his apartment. The information from the confidential informant does not corroborate their conclusion that [the defendant] kept drugs in his apartment, even though it does tend to establish that [the defendant] was a drug dealer.

*Id.* at 364 (internal citations modified). Thus, the mere fact that an affidavit of probable cause tends to establish the criminal activity of a defendant, and

the location of his home, does not provide probable cause to support the issuance of a search warrant for that home.

The Majority attempts to distinguish **Kline** upon the basis that, here, "we are dealing with two controlled transactions" that were observed by the police and set forth in the affidavit of probable cause. **See** Maj. Mem. at 16. However, the number of transactions that occurred on the street is entirely irrelevant. The crux of **Kline** is that the affidavit failed to establish a nexus between the residence and the drug transactions that occurred outside of the residence. It does not matter if the police observe ten, twenty, or even one hundred transactions on the street unless they can establish a nexus between those transactions and the home. Clearly, the facts that the police observed two transactions and then wrote about them in the affidavit of probable cause do not, *ipso facto*, remove this case from **Kline**'s command.

Moreover, the Majority entirely omits to discuss **Kline**'s requirement that an affidavit of probable cause must address **how** an informant or a police officer in conjunction with the informant concluded that additional drugs were secreted in the residence in question. **See id.** at 364. Under **Kline**, the number of transactions or the fact that a person lived at a particular residence is insufficient to satisfy that mandate. Indeed, for all practical purposes, the Majority concludes that the relevant nexus existed based only upon the facts that drug transactions occurred on the street and

that the actor lived in the residence to be searched, which is precisely what

**Kline** held to be insufficient for purposes of establishing probable cause.

In **Way**, this Court relied upon **Kline** to suppress evidence seized

pursuant to a search warrant in a narcotics case:

> The facts fairly summarized are that the informant arranged a drug transaction by phone. The alleged transaction occurred in a blue van along a country road. After the alleged transaction, police followed the blue van to a driveway of a property at the corner of Douglas Dr. and Glendale Rd. The informant identified appellant as the driver of the blue van. A police source told the affiant that appellant lived at the intersection of Douglas Dr. and Glendale Rd.

**Way**, 492 A.2d at 1154. The trial court concluded that the search warrant

was supported by probable cause. On appeal, this Court reversed,

concluding that, "within the four corners of the affidavit, we fail to find

sufficient facts to permit an issuing authority reasonably to conclude that

there was contraband in the premises to be searched." **Id.**

Once more, the Majority attempts to distinguish **Way** because the

affidavit of probable cause demonstrated that the actor's "base of

operations" was a van, and not the residence. **See** Maj. Mem. at 17. That

may be true, but the factual difference between **Way** and the instant case is

immaterial. **Way** stands for the same proposition as **Kline**, that the

affidavit of probable cause must establish a nexus between the illegal

behavior and the residence to be searched. In **Way**, the affidavit did not

make that showing regarding the residence. Here, the affidavit similarly

- 13 -

does not demonstrate a nexus between the street activity and the Gagliardi home.

Examining the totality of the circumstances, I find no factual averments in the affidavit that establish any "nexus" between Romeo P. Gagliardi's home and his drug transactions on the street. Within its four corners, the affidavit establishes only probable cause to believe that Romeo P. Gagliardi sold drugs and lived at the subject residence. Consequently, **Kline** and **Way** are analogous to the present case: "[T]he lack of a substantial nexus between the street crime and the premises to be searched renders the warrant facially invalid." **Way**, 492 A.2d at 1154; **see Kline**, 335 A.2d at 364.

As noted earlier, probable cause must be assessed utilizing a common sense standard. **See Jones**, *supra*. However, common sense is not the same as guesswork. A court cannot fill in factual gaps in pursuit of a result that might be dictated by common sense. To determine here that probable cause existed for the residence in question based only upon the facts contained within the four corners of the affidavit would require me, through conjecture and surmise, to supply facts that simply are not in the affidavit. The Majority concludes that the affidavit creates a fair probability that Romeo Gagliardi was using 2627 Emily Street as his "**base** of illicit operations." Maj. Mem. at 15 (emphasis in original). There are no facts in the affidavit to support this conjecture. The Majority relies only upon the facts that twice Gagliardi left his home to sell drugs and returned thereafter.

- 14 -

But, there is no way to know with any reasonable amount of certainty that any other illicit behavior was going on inside the home.

We can only guess as to what occurred once Gagliardi returned to his residence, an endeavor that we are prohibited from pursuing. There is not a single fact to suggest that additional drugs were inside the home, that Gagliardi was selling drugs from the home, or that he did anything other than live there. We cannot find probable cause simply because we think we know what went on inside the home. There must be facts or averments that a court can point to in the affidavit to support such a conclusion. I see none in the affidavit here. Without more information, I cannot conclude that a sufficient basis exists to warrant a magistrate to conclude that a nexus exists to establish probable cause between the actions observed on the street and 2627 Emily Street.

As a final matter, I must address **Commonwealth v. Davis**, 595 A.2d 1216, 1220-22 (Pa. Super. 1991), a case cited by the Commonwealth and one that bears facial similarities to the case *sub judice*. In **Davis**, a confidential informant informed police that Davis sold drugs in the area of the William Penn Project in the Chester, Pennsylvania. The informant described Davis, and told the police that Davis lived at 408 Pancoast Place, which is located in the William Penn Project. The informant observed Davis make three individual drug transactions in the William Penn Project, and then immediately return to 408 Pancoast Place. Finally, the informant indicated that Davis had received a shipment of "a couple of ounces of

cocaine" within forty-eight hours of providing the information to police. *Davis*, 595 A.2d at 1218. Police incorporated this information into an affidavit of probable cause and applied for a search warrant. The application was granted, and the officers executed the warrant on the house. The search resulted in the confiscation of drugs, money, and drug paraphernalia. *Id.*

Davis filed a suppression motion alleging, *inter alia*, that the warrant issued without adequate probable cause. The trial court granted the motion, and the Commonwealth appealed. Finding that the affidavit contained sufficient probable cause to support the warrant, this Court reversed the trial court's suppression ruling. *Id.* at 1219.

In so ruling, the *Davis* Court cited, *inter alia*, *Kline and Way*, but distinguished those cases because the affidavit contained more facts to establish a nexus between Davis' drug sales in the William Penn Project and 408 Pancoast Place than were present in *Kline* and *Way*. The Court noted that Davis had been observed leaving and returning to the house, which supported the inference that he lived there. He also was observed actually selling drugs in the area of the residence three times, and then returning to the residence immediately thereafter. Finally, the panel noted that "the confidential informant was told by Davis that he had 'just recently' obtained 'a couple of ounces of cocaine.' This also occurred within 48 hours prior to obtaining the warrant to search [Davis'] home." *Id.* at 1221.

*Davis* is inapposite.  Like the defendant in *Davis*, Romeo P. Gagliardi was observed making drug sales outside of his home and returning to the home shortly thereafter.  However, *Davis* is distinguishable because Davis had just recently received a substantial shipment of cocaine.  The quantity of cocaine was large enough to support the inference that the drugs necessarily were being stored in the home, primarily because it would be impractical to carry such a quantity on one's person.  That additional factor is what set *Davis* apart from *Kline* and *Way*.  Instantly, there is no indication in the affidavit of probable cause that Romeo P. Gagliardi had received a recent shipment of narcotics.  Hence, *Davis* is distinguishable, and does not control this case.  *Kline* and *Way* control.

In my view, the trial court's ruling was supported by the evidence of record and was not in error.  The trial court correctly ruled that the search was unconstitutional.  The evidence should remain suppressed.  Because the Majority concludes otherwise, I respectfully dissent.