664 A.2d 1364

**COMMONWEALTH of Pennsylvania**

v.

**Ronald CAMERON, Appellant.**

Superior Court of Pennsylvania.

Argued June 8, 1995.

Filed Sept. 6, 1995.

166

168

Enid W. Harris, Wilkes-Barre, for appellant.

William P. O'Malley, Assistant District Attorney, Scranton, for Commonwealth, appellee.

Before CAVANAUGH, McEWEN and TAMILIA, JJ.

TAMILIA, Judge:

Ronald Cameron appeals from the October 19, 1994, ten (10) to twenty (20) year judgment of sentence imposed after a jury found him guilty of possession of a controlled substance,[1] delivery of a controlled substance [2] and conspiracy [3] to possess with the intent to deliver cocaine. Appellant was arrested and his apartment searched on the basis of information provided by two confidential informants and a corroborating surveillance team. Identifiable currency used in controlled purchases, a drug scale and cocaine were seized.

■ Appellant raises a number of issues for this Court's consideration, beginning with the argument the Court of Com-

1. 35 Pa.S. § 780–113(16).

2. *Id.,* § 780–113(30).

3. 18 Pa.C.S. § 903.

mon Pleas of Lackawanna County did not have jurisdiction to commence his trial on November 8, 1993 because his appeal from the July 14, 1993 Order denying his motion to suppress was, at the start of trial, pending in this Court. Although the Superior Court, subsequent to trial, granted the Commonwealth's motion to quash, appellant avers because the Commonwealth had filed the motion to quash and this Court had accepted briefs and scheduled oral argument, there was every indication his motion to suppress would be considered on its merits. Trial, therefore, should have been continued pending the outcome of his appeal.

The resolution of appellant's argument is controlled by Pa.R.A.P. 1701(b)(6), which states an appeal from an interlocutory Order does not preclude the trial court from proceeding with trial. The fact the Commonwealth had challenged appellant's motion by filing a motion to quash does not alter the rule's import.

Next, appellant argues the evidence seized from 718 Prescott Avenue, Apartment 5, out of which defendant allegedly sold cocaine, should have been suppressed because the search warrant was unsupported by sufficient probable cause. Appellant contends misstatements in the affidavit of probable cause concerning the reliability of the confidential informants, defendant's address and criminal record, and the officers' failure to exert control over a controlled buy, rendered the warrant invalid.

The standard for determining whether probable cause exists for the issuance of a search warrant is the "totality of the circumstances test" as set forth below:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is

simply to ensure that the magistrate had a "substantial basis for ... conclud[ing] that probable cause existed." *Commonwealth v. Karns,* 389 Pa.Super. 58, 566 A.2d 615 (1989), *quoting Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). However, if a warrant is based upon an affidavit which contains deliberate or knowing misstatements of material fact, the search warrant must be rendered invalid. *Commonwealth v. Clark,* 412 Pa.Super. 92, 602 A.2d 1323 (1992). In deciding whether a misstatement is material, the test is not whether the statement strengthens the application for the search warrant, but rather whether it is essential to it. *Commonwealth v. Yucknevage,* 257 Pa.Super. 19, 390 A.2d 225 (1978).

The suppression court found the affidavit of probable cause contained sufficient evidence upon which to issue the search warrant. The affiant, Detective Speicher of the Scranton Lackawanna County Task Force, was assured of one of the two confidential informant's reliability, i.e. information previously provided led to arrests and convictions by Agent Hart of the Office of the Attorney General of Narcotics Investigation. The confidential informant told Hart an individual named Cameron was selling cocaine out of the 718 address and, in fact, executed a controlled purchase with Hart's assistance. A few weeks later, a second reliable confidential informant also informed Speicher "Ron Cameron" was dealing cocaine from Apartment 5 of 718 Prescott. This confidential informant and Speicher executed a controlled buy through a third party, or an "unwitting informant," from "Mike" at the 718 address. The unwitting informant told Speicher's confidential informant the cocaine purchased was an "eight ball" of "Ron Cameron's stuff." Confidential informant number two's reliability was attested to by Pennsylvania Trooper Bachman, a fact not included in the affidavit of probable cause. In further support of the request for a search warrant, Affiant Speicher averred he had also spoken with Parole Agent Golenberke who informed him Apartment 5 at 718 Prescott Avenue was occupied by Michael Morrison and Ronald Cameron. A surveillance team dispatched the same

evening of the second buy confirmed pedestrian and vehicular traffic coming and going from the aforestated address, the visitors remaining only briefly before leaving.

We find this information, standing alone, provided a sufficient basis from which the magistrate could have issued a search warrant. The fact the affiant failed to inform the issuing magistrate he had no personal knowledge of confidential informant number two's reliability, but relied on information provided by Trooper Bachman, does not constitute a misstatement of material fact or invalidate the confidential informant's reliability. Likewise, Speicher's averment, premised on information provided by Agent Golenberke, that appellant resided at the 718 address, contrary to appellant's attestation, was not a deliberate misstatement of material fact and, in light of the purchases made and traffic observed, was nonessential to the issuance of the warrant. Based upon the totality of the circumstances with which the magistrate was presented, none of the alleged misstatements or omissions argued by appellant was essential to the finding of probable cause. We find sufficient probable cause existed upon which the magistrate could issue the search warrant.

Appellant also argues the evidence seized should have been suppressed because the same warrant was executed twice on March 18, 1992, without presenting the magistrate with new or additional probable cause. Appellant alleges at 9:25 a.m. on March 18, 1992, 718 Prescott Avenue, Apartment 5, was searched and resident Michael Morrison was arrested. Later that same day, appellant argues, the same warrant was impermissibly used to search and arrest him. In support of this argument, appellant relies on *Commonwealth v. Bruno*, 466 Pa. 245, 352 A.2d 40 (1976), in which a warrant was executed on defendant's person, business and home address and, the following day, a second warrant was secured to search more thoroughly defendant's bedroom. Bruno argued the second search was illegal because the probable cause to search his room for the murder weapon was exhausted by the first search. The *Bruno* court disagreed, however, reasoning the police had presented sufficient additional information to

support a probable cause showing contraband remained despite the initial search. Based on *Bruno*, appellant herein argues a second warrant was necessary in order to "seize" him later in the afternoon, after the initial search of 718 Prescott.

We note with disfavor that without citations to the record, it is extremely difficult for this Court to make sense of appellant's argument and makes the resolution of this issue an even more tedious task. However, based on our review of the record, we find *Bruno* to be distinguishable from the factual scenario with which we are faced. Mr. Morrison and the 718 address were searched at approximately 9:30 a.m. on March 18th. Appellant was not present at that time. Later that same afternoon, appellant returned to the 718 address and, because the warrant issued had also authorized the search of Cameron's person, officers legitimately executed the warrant as it pertained to appellant. Also, the record indicates any further search of the premises was consensual. Appellant has provided us with no basis upon which to find reversible error.

█ Also related to the March 18, 1992 afternoon execution of the warrant, appellant argues officials used "trickery" to obtain entry to the premises, thereby violating the knock and announce rule and requiring suppression of all evidence seized. The trickery referred to by appellant is Detective Speicher's alleged failure to immediately announce his authority and purpose to Marie Paszek, the Apartment 5 resident who answered the door. The fact Speicher also purportedly had his handgun drawn, appellant argues, constituted an impermissible forcible entry.

The record belies appellant's argument. As the suppression court reasoned,

> [I]n the present case, Detective Speicher knocked on the door of Apartment No. 5, 718 Prescott Avenue, and announced to the occupants that it was "Donny," the unwitting informant. Marie Paszek opened the door and recognized Speicher as a detective who had been at the residence earlier in the day executing the search warrant. Detective Speicher informed her that he had a search warrant for the

defendant. He also had his gun drawn at the time. He then entered the premises to conduct the search. On these facts, we fail to see how Detective Speicher violated the "knock and announce" rule.

(Slip Op., Cottone, J., 6/14/93, p. 8.) We find the court did not err by failing to suppress on the basis of this argument. *See Commonwealth v. Regan,* 254 Pa.Super. 555, 386 A.2d 89 (1978). (Police use of a ruse or trickery to initiate the execution of a search warrant is permissible where it is followed by an announcement of authority and purpose and by peaceful entry.)

■ Next, appellant argues he was compelled to proceed to trial pro se in violation of his constitutionally guaranteed right to counsel. It is appellant's position the colloquy which occurred on July 12, 1993 was insufficient to show a knowing waiver of his right to counsel as required by Pa.R.Crim.P. 318, **Waiver of counsel.**

The record indicates appellant effectively waived counsel after appearing before the Honorable S. John Cottone and participating in a plea colloquy wherein he was duly advised of his rights and responsibilities before deciding freely to represent himself. *See Commonwealth v. Neal,* 387 Pa.Super. 165, 563 A.2d 1236 (1989). There was no error.

■ Lastly, the propriety of the jury selection process of Lackawanna County is called into question by appellant. The jury pool of the county is comprised of all those citizens, 18 years and older, who hold a valid Pennsylvania driver's license. In selecting this method of securing an adequate number and cross-section of potential jurors, the county jury commission determined the number of individuals so classified equalled or exceeded the number of names contained in the county voter registration list. *See In re: Filling the Jury Wheel,* 81 CIV 5843 (September 17, 1981). Appellant argues, however, this plan unfairly excludes Afro–Americans, in particular those too elderly, poor or handicapped to obtain a license, and wrongly conditions the federal right to serve on a jury on the privilege of driving a motor vehicle, that privilege

being afforded to only those individuals physically and mentally able to pass an exam and financially satisfy attendant fees and costs. Appellant contends he is entitled to a remand for an evidentiary hearing.

The Commonwealth responds appellant has waived his right to challenge the jury array by failing to comply with Pa. R.Cr.P. 1104, **Lists of Trial Jurors and Challenge to the Array**, which mandates all such challenges be made "not later than five days before the first day of the week the case is listed for trial ... and not thereafter, and shall be in writing, specifying the facts constituting the ground for the challenge." *Id.* The record indicates pro se appellant presented his challenge on the first day of trial, November 8, 1993. However, we are unable to discern, from our review of the record, when this matter was listed for trial. Moreover, appellant's challenge to the lack of Afro–American jury members, orally presented on November 8, 1993 and filed in written form on November 9, 1993, appears to have been entertained, albeit summarily, by the trial judge. Accordingly, we find the issue was not waived for purposes of appeal and will address it on the merits.

For a defendant to establish a prima facie violation of the fair cross-section requirement contemplated by the sixth amendment right to a jury, he must show 1) the group allegedly excluded is a distinctive group in the community; 2) representation of this group in the pool from which juries are selected is unfair and unreasonable in relation to the number of such persons in the community; and 3) the under-representation is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Appellant via his challenge, makes an unsubstantiated argument Afro–Americans are a cognizable group excluded via Lackawanna's use of those holding drivers' licenses to establish its jury pool. However, without support to the contrary, it is logically concluded the group identified by appellant would most likely include Caucasians and other races, as well as men and women, individuals from all socio-economic classes and those who are handicapped

yet choose to operate a motor vehicle. Appellant's failure to meet the first element of *Duren's* conjunctive test, by so establishing such a distinctive group, defined and limited by a clearly identifiable factor such as race or sex, effectively ends his constitutional challenge to the method employed to identify potential jurors. *See U.S. v. Grisham*, 841 F.Supp. 1138 (N.D.Ala.1994).

    ■   Appellant's equal protection challenge to the composition of the jury pool is likewise devoid of merit due to his failure to identify himself as a member of the class against whom discrimination is being directed, *see Grisham, supra,* and his failure to establish there has been some actual purposeful discrimination in the jury selection process, *see Ramseur v. Beyer*, 983 F.2d 1215 (3rd Cir.1992). As the trial court stated:

> Mr. Cameron's assertion in this regard fails to show even a hint of purposeful racial, economic or other discrimination[.]

(Slip Op., Walsh, 6/14/93, p. 18.)

    ■   Lastly, in the interest of logic and practicality, we are constrained to note, as Judge Walsh reveals in his illuminating Opinion, the use of the licensed driver list rather than the voter registration list[4] has, in compliance with 42 Pa.C.S. § 4521, **Selection of prospective jurors,** *expanded* the number of names in the 1994 available jury pool from 119,622 to 174,456, a fact most likely to have increased the number of minorities and social and physically disadvantaged individuals available for selection. Restrictions on qualified persons serving as jurors might apply to a greater degree on persons who suffer from an impediment to sight or from a condition such as epilepsy or advanced age but much less likely to apply because of race. It is recognized that possession of a driver's license is such a widespread and desirable privilege most fully practiced that it has become the linchpin for *expanding* voter registration. In short, no practice for obtaining random lists of names for prospective jurors, including voter registration lists, is

---

**4.** At a different time and/or place, voter registration lists themselves might have been suspect.

foolproof and on balance, use of driver license registration lists appears to be more representative than most. We find Lackawanna County's plan for the random selection of jurors through the use of Pennsylvania Department of Transportation's list of licensed drivers over the age of 18 to be constitutionally sound.

Having found each of appellant's arguments devoid of merit, we affirm the judgment of sentence entered October 19, 1994.

Judgment of sentence affirmed.