**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**JEAN MARTINELLI, Appellee.**

Superior Court of Pennsylvania.

Argued March 3, 1999.
Filed April 23, 1999.

Stuart B. Suss, Asst. Dist. Atty., West Chester, for Com., appellant.

James R. Freeman, Phoenixville, for appellee.

Before McEWEN, President Judge, POPOVICH, J., and CIRILLO, President Judge Emeritus.

POPOVICH, J.:

¶ 1 This is an appeal by the Commonwealth of the order of the lower court entered on August 19, 1998, in the Court of Common Pleas of Chester County by which the lower court suppressed all evidence seized by the police during their search of appellee's apartment. Citing our Supreme Court's decision in *Commonwealth v. Chambers*, 528 Pa. 403, 598 A.2d 539 (1991), the lower court suppressed the evidence because it found that the police violated the "knock and announce" rule embodied in Pa.R.Crim.P. 2007. Upon review, we affirm.

¶ 2 Herein, the Commonwealth questions: "Did the lower court commit an error of law by holding that the police violated the constitutional doctrines pertaining to knocking and announcing when they used a ruse to obtain the peaceful opening of the door to the residence, and then, in the presence of the [appellee] entered the residence through the already opened door, instantaneously after announcing their identity and purpose?"

¶ 3 "The standard of review of an appeal from a suppression ruling is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are in error." *Chambers*, 598 A.2d at 540, citing *Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152 (1986). In *Chambers, supra*, our Supreme Court set forth the law applicable to the "knock and announce" in Pennsylvania, as follows:

The "knock and announce" rule, embodied in Rule 2007, originated in the English common law and was adopted in the United States. Both our Court and the United States Supreme Court have held that the Fourth Amendment's prohibition against unreasonable searches and seizures applies to the manner of a warrant's execution. *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Commonwealth v. Newman*, 429 Pa. 441, 240 A.2d 795 (1968). Absent exigent circumstances, an announcement of both authority and purpose is required.

Rule 2007, the procedural rule that embodies the common law rule, states:

**RULE 2007. MANNER OF ENTRY INTO PREMISES**

(a) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of his identity, authority and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require his immediate forcible entry.

(b) Such officer shall await a response for a reasonable period of time after his announcement of identity, authority and purpose, unless exigent circumstances require his immediate forcible entry.

(c) If the officer is not admitted after such reasonable period, he may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

The purpose of the "knock and announce" rule is to prevent violence and physical injury to the police and occupants, to protect an occupant's privacy expectation against the unauthorized entry of unknown persons, and to prevent property damage resulting from forced entry. *Commonwealth v. Morgan*, 517 Pa. 93, 534 A.2d 1054 (1987), citing *Commonwealth v. McDonnell*, 512 Pa. 172, 516 A.2d 329 (1986). *The purpose may be achieved only if the police officer awaits a response for a reasonable period of time after his announcement of identity, authority, and purpose.*

*       *       *

The rule is intended to protect individuals from searches and seizures that are unreasonable because of the manner of the execution of a warrant. Instances in which the police conduct complained of was found not to have defeated the purpose of the rule, include when:

1. the occupants of the premises remain silent after repeated knocking and identification;

2. the police are virtually certain that the occupants of the premises already know their purpose;

3. the police have reason to believe that an announcement prior to entry would imperil their safety; and

4. the police have reason to believe that evidence is about to be destroyed. *Commonwealth v. Morgan*, 517 Pa. at 97, 534 A.2d at 1056. In each of those instances, the execution of the warrant was held to be valid not because the defendants failed to establish that the police conduct resulted in violence, physical injury, or property damage, but because the police officers' conduct was reasonable under those circumstances.

*Chambers*, 598 A.2d at 540–41 (emphasis added). *See also Commonwealth v. Ceriani*, 411 Pa.Super. 96, 600 A.2d 1282, 1287–88 (1991) (following *Chambers* ).

¶ 4 With the aforementioned standard of review and applicable law in mind, we now address the merits of the Commonwealth's claim that the police's conduct when executing the search warrant at appellee's apartment did not amount to a forcible entry which required suppression of the evidence subsequently seized. We note that the Commonwealth expressly does not challenge the lower court's findings of fact as set forth in its opinion of August 19, 1998, which follow:

On the date in question, Detective David Sassa and other county detectives and members of the North Coventry Police Department went to the [appellee's] apartment in the Valley View apartment complex in North Coventry Township, Chester County. They had with them a search warrant validly issued by District Justice James D'Angelo, on the basis of information received by Detective Sassa that drug sales had taken place in [appellee's] apartment. Detective Sassa had in fact arranged for two controlled buys from that apartment prior to seeking a warrant.

On the day the warrant was executed, Detective Sassa, accompanied by other officers, went up to the door of Defendant's apartment and knocked. He heard [appellee] say from within, "who's there?" Detective Sassa answered "Dave". He acknowledges that he did this as a ruse to get the [appellee] to open her door.

Seconds elapsed, and the [appellee] then opened her door part way. Detective Sassa said, "police, search warrant", and instantaneously entered the doorway, pushing the door further open as he walked in. He and the others had their guns drawn. The others followed quickly and secured the apartment. Detective Sassa testified that he had received information indicating that drugs

had just been delivered to the premises, and that he was concerned that they might be destroyed if he delayed in his entry.

Trial Court Opinion, pp. 1–2.

¶ 5 Following the suppression hearing, the lower court determined that the facts of the present case were not sufficiently distinguishable from the facts of *Chambers, supra,* for the Commonwealth to avoid suppression of the evidence seized from appellee's apartment. Specifically, the lower court noted that like the officers' conduct in *Chambers, supra,* Detective Sassa failed to wait a reasonable period of time after announcing his identity, authority and purpose to permit appellee to surrender the premises peacefully. Trial Court Opinion, p. 5.

¶ 6 In order of demonstrate the factual similarities between the present case and *Chambers, supra,* we quote our Supreme Court's summary of the facts of *Chambers, supra :*

> On February 16, 1987 at 1:03 p.m., four police officers from the Municipality of Penn Hills initiated the execution of a search warrant at the residence of Robert Chambers. The Appellees, Robert Chambers, Cheryl Chambers, and Rebecca Kirkland, were in the residence at that time, along with two other individuals. Two detectives went to the back of the house and the other detectives knocked at the front door.
>
> Robert Chambers began to open the door. Simultaneously, the police officer pushed the door open, pushing Mr. Chambers backwards. Having drawn his weapon before the door was opened, the police officer pointed the weapon at Mr. Chambers. He identified himself as an officer and stated that he had a search warrant for the premises. He told Mr. Chambers to "Get up against the wall and don't move."
>
> The four detectives entered the premises with their weapons drawn. All of the people in the house were taken into the living room, searched, and advised of their rights. The officers then searched the premises. During the search, drugs and drug paraphernalia were seized and several statements were obtained from Mr. Chambers.

*Chambers,* 598 A.2d at 540.

■ ¶ 7 Upon review, we find that the facts as determined by the court below are supported by the record, as the Commonwealth concedes, and that the legal conclusion drawn from those facts by the lower court was not erroneous. The facts of the present case are not distinguishable from those of *Chambers, supra.* Equally applicable to the facts before us are the following comments from our Supreme Court in *Chambers, supra :*

> In this case, however, consent was not given by [appellee]. The testimony of the police officer demonstrates that [appellee] never had an opportunity to give [her] consent and to voluntarily admit the officers to [her] premises. The officers immediately entered the premises, forcibly propelling [appellee] backwards on entry.

*Chambers,* 598 A.2d at 542.

¶ 8 Presently, we agree with the lower court's conclusion that appellee was not given an opportunity to surrender her apartment peacefully. Rather, the police "instantaneously" entered appellee's apartment after she opened the door without waiting a reasonable period of time after announcing their identity, authority and purposes, to permit her to surrender her premises voluntarily.[1]

¶ 9 The Commonwealth urges this court to ignore *Chambers, supra,* and adopt the line of decisions from the federal courts and other states' courts which "holds that

---

1. The Commonwealth does not argue that the forcible entry was justified. Appellee did not remain silent after the police officer knocked. There is no evidence of record that she knew the officer's purpose. Nor is there evidence of record that the police feared for their safety or were concerned that evidence would be destroyed. *See Chambers,* 598 A.2d at 541.

an announcement of identity and purpose by the police prior to entry permits the police to immediately enter a residence, even by pushing open a partially open door, when such announcement precedes the entry and is made in the presence of an occupant of the premises." Commonwealth Brief, p. 12. Those cases cited by the Commonwealth are: *United States v. Kemp*, 12 F.3d 1140 (D.C.Cir.1994); *United States v. Contreras–Ceballos*, 999 F.2d 432 (9ᵗʰ Cir.1993); *United States v. Salter*, 815 F.2d 1150 (7ᵗʰ Cir.1987); *United States v. Remigio*, 767 F.2d 730 (10ᵗʰ Cir.), *cert. denied*, 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 465 (1985); *United States v. Bethea*, 598 F.2d 331 (4ᵗʰ Cir.), *cert. denied*, 444 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 81 (1979); *Adcock v. Commonwealth*, 967 S.W.2d 6 (Kentucky 1998); *State v. Dixon*, 83 Hawai'i 13, 924 P.2d 181 (1996); and *Commonwealth v. Goggin*, 412 Mass. 200, 587 N.E.2d 785 (1992). While the Commonwealth accurately summarizes the holdings of those cases, we, nevertheless, are required to follow the decision of our Supreme Court based upon an identical issue with substantially similar facts, especially where that decision is based upon Article I, § 8 of the Pennsylvania Constitution.[2]

¶ 10 In summary, we find that the lower court did not err in suppressing the ev-

idence seized during the search of appellee's apartment. Although the officers announced their identity, authority and purpose, they neglected to wait a reasonable time thereafter to permit appellee to surrender her residence voluntarily. Rather, the police, immediately upon announcing their identity and purpose, pushed open the partially opened door and thereby forcibly entered. As our Supreme Court has held, such actions warrant suppression of the evidence seized during the subsequent search in accordance with Article I, § 8 of the Pennsylvania Constitution. *Chambers*, 598 A.2d at 542.[3]

¶ 11 Order affirmed.

**2.** The Commonwealth suggests that we need not follow *Chambers, supra,* because in that case, the Commonwealth had conceded that the police officers forcibly entered the premises without waiting a reasonable period of time to allow the defendant to surrender it willingly. However, it is clear from a reading of the opinion that our Supreme Court did consider the question of whether the police waited a reasonable period of time after announcing their identity, authority and purpose before using force to secure the premise. *Chambers*, 598 A.2d at 542. Accordingly, we are duty bound 'to follow our high court's lead.

**3.** We recognize that subsequent to *Chambers, supra,* this court, in *Commonwealth v. Cameron*, 445 Pa.Super. 165, 664 A.2d 1364, 1368 (1995), citing *Commonwealth v. Regan*, 254 Pa.Super. 555, 386 A.2d 89 (1978), found that

an impermissible forcible entry did not occur where a police officer, with his gun drawn, announced his identity and informed the apartment's resident that he had a search warrant and then entered the apartment through the door which the resident had already opened. We distinguish the present case from *Cameron, supra.* Specifically, in *Cameron, supra,* the suppression court made no findings of fact with regard to whether the officer entered the premises prior to giving the occupant an opportunity to surrender the premises peacefully. Thus, the issue squarely before us was neither addressed nor raised in *Cameron, supra.* In fact, the primary "knock and announce" issue was whether the police could use "trickery" to get the premises' resident to open the door so that the officers could announce their identity, authority and purpose.