J-S53014-20
J-S53015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| LARRY SAMUELS | : | |
| Appellant | : | No. 627 EDA 2020 |

Appeal from the Judgment of Sentence Entered June 5, 2018
In the Court of Common Pleas of Montgomery County Criminal
Division at No(s): CP-46-CR-0006041-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| LARRY SAMUELS | : | |
| Appellant | : | No. 628 EDA 2020 |

Appeal from the Judgment of Sentence Entered June 5, 2018
In the Court of Common Pleas of Montgomery County Criminal
Division at No(s): CP-46-CR-0005275-2016

BEFORE:   SHOGAN, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SHOGAN, J.:                   **FILED:  MAY 7, 2021**

Appellant, Larry Samuels, appeals from the judgments of sentence imposed following a stipulated bench trial in two underlying court of common pleas matters.  Each appeal has been given a separate Superior Court docket number: 627 EDA 2020, corresponding to CP-46-CR-0006041-2015, and 628

---

[*] Retired Senior Judge assigned to the Superior Court.

EDA 2020, corresponding to CP-46-CR-0005275-2016. The appeals include identical issues and briefs, and a single trial court opinion disposed of both matters. As such, we *sua sponte* consolidate these matters pursuant to Pa.R.A.P. 513 and address them concurrently.

The trial court summarized the factual and procedural history, as follows:

Appellant . . . appeals *nunc pro tunc* from the judgment of sentence imposed on June 5, 2018, following a stipulated bench trial, at the conclusion of which he was convicted of numerous counts of burglary–overnight accommodation, person present and theft by unlawful taking or disposition, one count of criminal attempt and multiple counts of criminal mischief.[1] These convictions arose from [Appellant's] commission of a string of overnight residential burglaries spanning Montgomery, Bucks, . . . Chester, Delaware, and Philadelphia Counties. On appeal, [Appellant] challenges the denial of his motion to suppress, and raises challenges to trial counsel's stewardship.

A two-day suppression hearing was held on February 12, 2018 and on February 27, 2018. Subsequently, this [c]ourt issued its Findings of Facts and Conclusions of Law and a Supplemental Findings of Facts and Conclusions of Law on March 20, 2018 and on April 3, 2018, respectively. Suppression was denied.

On June 1, 2018, [Appellant] proceeded to a stipulated non-jury trial where [Appellant] stipulated to the facts as set forth by the Commonwealth[:]

Since July of 2014, there was a joint task force investigation involving multiple police departments in Montgomery, Bucks, Delaware, and Chester [C]ounties . . . and the City of Philadelphia, Pennsylvania.

The affiant, Jim McClelland, is a member of that task force and was involved in the investigation of over 100

_____

[1] 18 Pa.C.S. §§ 3502(a)(ii), 3921(a), 901(a), and 3304, respectively.

- 2 -

residential burglaries with similar modus operandi, which were identified spanning through Montgomery, Philadelphia, Bucks, Delaware and Chester [C]ounties. The investigation was focused on an unusual and very specific style of crime patter[n] of overnight, occupied residential burglaries that all occurred within walking distance of SEPTA Regional Rail Line stations. Typically, several houses were burglarized each night in a close proximity in the same time frame. Typically, the homes were entered by either unlocked windows or doors; sometimes screens were cut, that being the only sign of any forced entry. The items that were typically taken were cash, Apple electronic devices, laptops, cell phones[,] and purses. The actor would frequently eat [or] take food from the homes' refrigerators and discard the drink containers outside. The purses were usually rummaged through and discarded in neighboring yards and driveways after being emptied of cash and other non-traceable valuables. Credit cards were not taken from the homes or from the purses that were recovered in the yards. Car keys were taken from the homes, and cars stolen in several cases.

One of the main targets of the burglar in this series of burglaries appeared to be Apple products, such as iPhones, iPads and laptops.

Apple has [an] application available for its devices which allows the owner of a device to search for its current location through the Internet. A common location was developed from several Apple items taken during these burglaries, which would be the 1800 block of Hart Lane in Philadelphia, Pennsylvania.

On June 11, 2015, a surveillance camera was installed on a telephone pole at Jasper Street and Hart Lane to provide[] recorded video surveillance.

(Stipulated Bench Trial, 6/1/18 pp. 18-22) [Appellant] was developed as a suspect, which led police to search 1840 Hart Lane pursuant to a warrant. The homeowner and sole occupant of that address, Tony Nguyen, consented to a search of his cell phone. [Appellant] was arrested at his residence located at 2715 West

- 3 -

Glenwood Avenue in Philadelphia. A search warrant was obtained for that location. Additional search warrants were obtained for cellular call records and cell tower details for [Appellant's] cell phones and for the physical contents of the cell phone found in his residence. The results of these searches revealed a pattern for [Appellant's] phone being in the immediate vicinity during the overnight hours of the residential burglaries. The Commonwealth went on to detail about 80 attempted and completed burglaries committed by [Appellant]. At the conclusion of the stipulated bench trial, [Appellant] was found guilty of the aforementioned charges.

On June 5, 2018, [Appellant] was sentenced to an aggregate term of 15 to 30 years' imprisonment. A timely appeal was filed. The Pennsylvania Superior Court quashed the direct appeal pursuant to Commonwealth v. Walker, 185 A.3d 969 (Pa. 2018).

Subsequently, [Appellant] filed a pro se PCRA petition on July 1, 2019. Counsel was appointed and filed an Amended PCRA petition seeking the restoration of [Appellant's] direct appeal rights. On February 10, 2020, by agreement of the Commonwealth, an order was entered restoring [Appellant's] direct appeal rights.

Trial Court Opinion, 5/19/20, at 1–4 (some record references omitted).

Appellant raises the following issues for appellate review:

1. Was the Judge's decision that [Appellant] did not have an expectation of privacy at 1840 Hart Lane, Philadelphia, Pennsylvania in error?

2. Was the Judge's decision that the search warrant for 1840 Hart Lane was sufficient, despite relying on stale information and lacked probable cause, in error?

3. Was it an error for the Judge not to suppress the evidence from both 1840 Hart Lane, Philadelphia, Pennsylvania and 2715 West Glenwood Avenue, Philadelphia, Pennsylvania, despite deliberately or recklessly including false information?

4. Did the Judge improperly allow testimony outside of the four corners of the warrant for 1840 Hart Lane by accepting testimony from Detective [Steven] Fink regarding Robert Green

- 4 -

and the subject of a July 19, 2015 security camera from the 1800 Hart Lane pole?

5. Did the Judge improperly allow testimony outside of the four corners of the warrant for 2715 West Glenwood Avenue by accepting the affiant's explanation that writing "[Appellant] was arrested outside of 2715 Glenwood Avenue" was a mistake, when in fact [Appellant] was arrested inside 2715 Glenwood Avenue and the affiant failed to inform this to the issuing authority?

6. Was [Appellant] denied effective assistance of counsel in that Trial Counsel failed to properly impeach Detectives [Ronald] Cupo and [James] McClelland's credibility, testimony, false statements omissions and information they asserted and provided in the search warrants for 1840 Hart Lane and 2715 West Glenwood Avenue, as well as, the July 23, 2015 arrest warrant for [Appellant] by missing impeachment opportunities and such actions prejudiced [Appellant]?

7. Was [Appellant] denied effective assistance of counsel in that Trial Counsel failed to file an omnibus pretrial motion to suppress the arrest warrant for [Appellant] and the evidence resulting from the arrest warrant because it contained materially false statements and it was made with reckless disregard for the truth and therefore it was legally insufficient to allow police to seize [Appellant] and his property and such actions prejudiced [Appellant]?

8. Was [Appellant] denied effective assistance of Counsel in that Trial Counsel failed to request sequestration of the Commonwealth witnesses at the Suppression Hearing and any subsequent contested hearing, when witnesses testified regarding information they either provided or supplied in the search warrants for 1840 Hart Lane and/or 2715 Glenwood Avenue because they contained numerous material falsehoods and information from law enforcement that was changed by another officer and all were made with at least reckless disregard for the truth and such actions prejudiced [Appellant]?

9. Was [Appellant] denied effective assistance of counsel in that Trial counsel failed to properly investigate the case and call potential witnesses that will show that Detective Cupo and McClelland acted with reckless disregard and perjuri[ous] conduct

and that [Appellant] had a reasonable expectation of privacy in the premises at 1840 Hart Lane?

Appellant's Brief at 4–7.

We observe at the outset that Appellant's issues six through nine, alleging ineffectiveness of trial counsel, are not reviewable on direct appeal. *See Commonwealth v. Britt*, 83 A.3d 198, 203–204 (Pa. Super. 2013) ("absent either good cause or exceptional circumstances and a waiver of PCRA review, ineffective assistance of counsel claims must await collateral review"). The facts of this case do not fall within either category of issues, nor has Appellant waived PCRA review. *See* Appellant's Brief at 32 ("Appellant reserves his right to raise these [ineffectiveness] issues upon collateral review."). Therefore, we will not review Appellant's issues related to trial counsel's stewardship and turn to his remaining arguments.

Appellant first challenges the trial court's conclusion that he did not have a reasonable expectation of privacy in the premises located at 1840 Hart Lane. The principles governing our review are as follows:

> Our analysis begins with the presumption that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. If the trial court denies the motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. In so doing, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Bowmaster*, 101 A.3d 789, 792 (Pa. Super. 2014) (citation omitted). Furthermore, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003) (citation omitted). The suppression court is also entitled "to believe all, part or none of the evidence presented." *Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa. Super. 2011) (quotation omitted).

> A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy. Standing requires a defendant to demonstrate one of the following: (1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged includes as an essential element the element of possession; or (4) a proprietary or possessory interest in the searched premises. A defendant must separately establish a legitimate expectation of privacy in the area searched or thing seized. Whether [a] defendant has a legitimate expectation of privacy is a component of the merits analysis of the suppression motion.

*Commonwealth v. Burton*, 973 A.2d 428, 435 (Pa. Super. 2009) (*en banc*). The determination of whether defendant has met this burden is made upon evaluation of the evidence presented by the Commonwealth and the defendant. *Commonwealth v. Maldonado*, 14 A.3d 907, 910 (Pa. Super. 2011).

Instantly, the Commonwealth charged Appellant with the possessory offense of receiving stolen property. Thus, Appellant had "automatic standing" to bring a suppression motion before the court. *See*

*Commonwealth v. Enimpah*, 106 A.3d 695, 698 (Pa. 2014) (quotation omitted) ("[I]t is well settled that a defendant charged with a possessory offense in this Commonwealth has 'automatic standing' because the charge itself alleges an interest sufficient to support a claim under Article I, § 8."). In order to prevail on a suppression motion, however, a defendant is required to separately demonstrate a personal privacy interest in the area searched or effects seized, and support that such interest was "actual, societally sanctioned as reasonable, and justifiable." *Commonwealth v. Bostick*, 958 A.2d 543, 551 (Pa. Super. 2008) (quoting *Commonwealth v. Peterson,* 636 A.2d 615, 617 (Pa. 2008)). "[I]f the evidence of the Commonwealth, the party with the burden of production, shows the defendant lacked such a privacy interest," the Commonwealth "need prove no more." *Enimpah*, 106 A.3d at 701–702.

The trial court concluded that Appellant did not have a reasonable expectation of privacy in 1840 Hart Lane, reasoning:

> At that time of the [suppression] hearing Mr. [Anthony] Nguyen resided in the state prison system. He had previously resided at 1840 Hart Lane. Mr. Nguyen testified that [Appellant] resided there, and he knew [Appellant] had another residence. He testified that he did not consent to the police looking at his phone. This testimony was not accurate and not worthy of belief on these points.
>
> Mr. Nguyen testified on cross-examination that at the time of the warrant he knew that [Appellant] had a second apartment. He remembered giving the police a statement on September 18, 2015, which he signed.

\* \* \*

Detective McClelland testified as a rebuttal witness on behalf of the Commonwealth. Detective McClelland had been the one who spoke with Mr. Nguyen in July of 2015. Mr. Nguyen told him that [Appellant] did live with him for a period of time, earlier in the year. He indicated that Mr. Nguyen didn't remember the exact date.

\* \* \*

The Superior Court of Pennsylvania outlined the following factors when determining whether a defendant has a legitimate expectation of privacy in another person's home:

(1) Possession of a key to the premises;

(2) Having unlimited access to the premises;

(3) Storing of clothing or other possessions on the premises;

(4) Involvement in illegal activities conducted on the premises;

(5) Ability to exclude other persons from the premises;

and

(6) Expression of a subjective expectation of privacy in the premises.

Bostick at 553 (quoting Commonwealth v. Govens, 632 A.2d 1316, 1319 (Pa. Super. 1993) (citations omitted)).

Specifically, a defendant who is more than a "casual visitor" to another's residence "must demonstrate a significant and current interest in the searched premises in order to establish an expectation of privacy." Id. at 552-553.

In this case, this [c]ourt initially determined that [Appellant] had standing to bring this motion to suppress. However, [Appellant] lacked a privacy interest in the residence at 1840 [H]art Lane. He did not have a reasonable expectation of privacy in these premises. This [c]ourt based this on the fact that

[Appellant] did not live at 1840 Hart Lane. In fact, he had another residence at 2715 West Glenwood Avenue in Philadelphia. There was no evidence he actually possessed the key; although there was some evidence that he did have access to entry. There was no evidence that he stored clothing or any possessions there. It may be inferred that he was involved in illegal activity with Mr. Nguyen, who did live there. There was no evidence whatsoever that he had any ability to exclude any person from that premises, and he did not demonstrate any subject expectation of privacy in the premises. Based on these factors, this [c]ourt concluded that [Appellant] did not have a reasonable expectation of privacy in the search in the premises of 1840 Hart Lane. Accordingly, [Appellant] lacked the authority to challenge search warrant for 1840 Hart Lane.

The only evidence presented by [Appellant] that he lived at 1840 Hart Lane, was through the testimony of Mr. Nguyen, which was not credited by this [c]ourt. Rather, the credible testimony of Detective McClelland who testified that when he spoke to Mr. Nguyen around the time of the search warrant, Mr. Nguyen told him that [Appellant] had not been living there, and that it was for some time. Accordingly, [Appellant] was unable to show that he had a reasonable expectation of privacy in the 1840 Hart Lane premises.

Trial Court Opinion, 5/19/20, at 17–22 (record references omitted).

Appellant contends, however, that he did have a privacy interest in 1840

Hart Lane:

[I]t was not disputed that at some point, [Appellant] had resided at 1840 Hart Lane. The owner Anthony Nguyen testified that [Appellant] paid rent and stayed in a room in the back of the house. Mr. Nguyen testified that [Appellant] lived there, but had moved out when Nguyen's parents complained about [Appellant's] use of marijuana. Nguyen further testified that even after being asked to leave, [Appellant] lived at least part-time at 1840 Hart Lane because Nguyen was on house arrest and [Appellant] was able to help him with errands.

The Commonwealth witnesses never dispute that [Appellant] resided at 1840 Hart Lane at some point in time. Detective James McClelland testified that Nguyen told him that

[Appellant] had been living with him at 1840 Hart Lane at a time earlier in the year 2015. McClelland also testified that Nguyen said [Appellant] had moved out earlier that year. While McClelland's testimony is contradictory to Nguyen's testimony, it is noteworthy that McClelland remembers this conversation from approximately 30 months prior to Trial and this specific information is never recorded on any notes or reports prior to Trial. This information also does not appear in the written statement taken from Nguyen contemporaneously.

[T]he evidence used to obtain search warrants for 1840 Hart Lane see [Appellant] using the property like a true owner. Detective Fink testifie[d] that [Appellant] was seen resting on the steps in front of 1840 Hart Lane and that [Appellant] was seen walking down the sidewalk and turning as if to enter 1840 Hart Lane. [Appellant] was seen riding a bike to 1840 Hart Lane, opening the door and entering on his own and taking the bike in with him. It was testified to that [Appellant] did not have to wait for someone to let him in.

[Finally], keys for 1840 Hart Lane were never found, but the same can be said about keys for 2715 West Glenwood Avenue, which were never found either.

Appellant's Brief at 21–22.

We agree with the trial court that Appellant did not have a reasonable expectation of privacy in the search of 1840 Hart Lane. First, Appellant places undue emphasis on the fact that he earlier resided at that residence. It is undisputed that Appellant lived at a different address when the search warrant was executed at 1840 Hart Lane. *See* N.T. (Suppression), 2/12/18, at 19 (the address attached to Appellant's driver's license was "in the City of Philadelphia . . . Glenwood"); *Id.* at 57–58 (Detective Fink's research disclosed that Appellant's name was not associated with 1840 Hart Lane); N.T.

(Suppression), 2/27/18, at 4 (Mr. Nyugen confirmed that Appellant had another residence).

Second, the trial court appropriately placed greater weight on the testimony of Detective McClelland, and discredited Mr. Nguyen's testimony regarding Appellant's comings and goings at 1840 Hart Lane. Detective McClelland stated that Mr. Nguyen told him in July 2015 that Appellant lived with him for a period of time, but had moved out prior to the execution of the search warrant. N.T. (Suppression), 2/27/18, at 16. Mr. Nguyen's testimony was extremely vague as to dates and other specifics regarding Appellant's residency at 1840 Hart Lane, however Mr. Nyugen admitted that his parents banished Appellant from the premises because they disapproved of Appellant's lifestyle. *Id.* at 4–5. "The suppression court has sole authority to assess the credibility of the witnesses and is entitled to believe all, part or none of the evidence presented." *Commonwealth v. Simmen*, 58 A.3d 811, 817 (Pa. Super. 2012) (quotation omitted). We will not disturb the trial court's credibility findings on appeal. *Id.*

Third, Appellant asserts that the camera pole footage showing him sitting on the steps on 1840 Hart Lane and, on one occasion, entering the premises with his bicycle without assistance, indicates that he had unfettered access to the property. On this point the trial court conceded that the camera footage demonstrated that Appellant appeared to have some access to the property and also allowed for an inference that Appellant and Mr. Nguyen may

have conducted illegal activity on the premises. Nonetheless, by weighing the other *Bostick* factors, *i.e.*, Appellant did not have a key to the premises,[2] did not store clothing or any possessions there, had no ability to exclude any person from that premises, and did not establish any subject expectation of privacy in the premises, the trial court determined that Appellant did not demonstrate any reasonable expectation of privacy in the premises. We conclude that the trial court correctly balanced the *Bostick* factors in assessing Appellant's authority to challenge the search warrant for 1840 Hart Lane. Accordingly, there was no error in its legal conclusion that Appellant lacked a reasonable expectation of privacy for that property.

Appellant's next three issues concern the legality of the search warrant for 1840 Hart Lane. In addition to alleging that the warrants relied on stale information and included false statements, Appellant contends that the trial court improperly allowed testimony outside the four corners of the warrants during the suppression hearing. Appellant's Brief at 4–5. The trial court did not address the merits of these arguments because Appellant "did not possess an expectation of privacy in that residence and lacked legal authority to challenge the search warrant[s]." Trial Court Opinion, 5/19/20, at 23–25.

---

[2] Appellant's contention that the evidence that he did not have a key to 1840 Hart Lane was not significant because a key also was not discovered for 2715 West Glenwood Avenue does not merit further scrutiny. Appellant's expectation of privacy in 1840 Hart Lane is unrelated to his expectation of privacy in 2715 West Glenwood Avenue.

- 13 -

The trial court correctly declined review of these issues.  ***See Enimpah***, 106 A.3d 701-702 ("[I]f the evidence of the Commonwealth, the party with the burden of production, shows the defendant lacked such a privacy interest," the Commonwealth "need prove no more.").

Appellant's final reviewable issue concerns the search warrant for 2715 West Glenwood Avenue.  Appellant avers that the trial court erred when it accepted testimony outside the four corners of the warrant that Detective Cupo arrested Appellant outside of 2715 West Glenwood Avenue when, in fact, Appellant was arrested inside the premises.  Appellant's Brief at 30.  Appellant asserts that Detective Cupo's inability to explain the discrepancy indicates that the detective "either intentionally misled the issuing authority or acted in reckless disregard of the truth when completing the affidavit of probable cause."  ***Id.*** at 31.

The trial court resolved this issue, as follows:

> In Pennsylvania . . . at a suppression hearing, a defendant can go beyond the four corners of the search warrant and attack the affiant's veracity.  "Where a police officer makes a knowing misstatement of material fact in [an affidavit in support of an application for a search warrant], the warrant is invalid and any evidence obtained pursuant to that warrant is inadmissible."  Commonwealth v. Minoske, 441 A.2d 414, 418 (Pa. 1982).
>
> Misstatements of fact will invalidate a search and require suppression only if they are deliberate and material.  Commonwealth v. Tucker, 384 A.2d 938, 944 (Pa. Super. 1978).  "A material fact is one without which probable cause [for] search would not exist."  Commonwealth v. Clark, 602 A.2d 1323, 1326 (Pa. Super. 1992).  "In deciding whether a misstatement is material, the test is not whether the statement strengthens the application for the search warrant, but rather whether it is essential

to it." Commonwealth v. Cameron, 445 Pa. Super. 165, 171, 664 A.2d 1364, 1367 (1995).

In this case, [Appellant] challenged the 2715 West Glenwood Avenue search warrant, arguing that it lacked probable cause at the time the issuing authority signed the warrant, and now argues that this [c]ourt should have not considered the detective's suppression testimony to supplement the warrant in determining whether probable cause existed.

In this case, based upon the credible testimony of Detective Cupo, this [c]ourt did not reweigh the probable cause determination made by the issuing authority; rather, this [c]ourt was weighing whether Detective Cupo made an intentional material misstatement of fact which could invalidate the warrant. This [c]ourt ultimately determined that there was no intentional material misstatement of fact. The mistake was unintentional; therefore, this [c]ourt determined that the warrant would be upheld.

Trial Court Opinion, 5/19/20, at 26–27 (record references omitted).

Based on the evidence presented to it, the trial court concluded that Detective Cupo did not deliberately misstate the fact in question, and it is not our province to disturb that finding. **See Simmen**, 58 A.3d at 817 ("The suppression court has sole authority to assess the credibility of the witnesses and is entitled to believe all, part or none of the evidence presented."). As such, we affirm the trial court's denial of Appellant's request to suppress the evidence seized as the result of the execution of the search warrant at 2715 West Glenwood Avenue.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/7/21